No. 31,507

CLARENCE R. NIGH et al., *Appellees,* v. HENRY C. HAAS et al., *Appellants.*

(31 P. 2d 28.)

Opinion filed April 7, 1934.

*T. M. Lillard, O. B. Eidson, Olin D. Buck* and *Tinkham Veale,* all of Topeka, for the appellants.

*G. R. Gard, Stanley E. Toland,* both of Iola, *G. H. Lamb* and *W. E. Hogueland,* both of Yates Center, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action under the declaratory judgment act. The purpose of the suit was to settle the rights of parties in an oil and gas lease. Judgment was entered answering certain questions in favor of plaintiffs. Defendants appeal.

The facts are simple, and many of them have been agreed upon. On November 16, 1917, J. I. Shaffer, who was the owner in fee of a half section of land in Woodson county, gave an oil and gas lease on the entire half section to Haas and VanPetten. He retained a one-eighth royalty. By the terms of this lease it was to continue for a period of five years and as much longer as oil or gas should be produced in paying quantities. The lease also provided that if no well be drilled within a certain time rentals should be paid. These terms were complied with until on or about February 3, 1920. On that date Haas and VanPetten, the original lessees, assigned the lease to J. L. Bedwell and C. T. Kirk. They retained a one-eighth overriding royalty.

This contract of assignment provided that Bedwell and Kirk would comply with all the obligations of Haas and VanPetten under the original lease.

Kirk and Bedwell assigned this lease, in so far as it covered the east quarter of the half section, to George H. Snyder.

By transactions not necessary to be noticed here wells were drilled on this quarter section and production had. We are not concerned here about this quarter section except for the effect the production had on the lease on the west quarter.

From the time the original lease was given on November 16, 1917, up until June, 1927, nothing was ever done toward developing the west quarter section. It is the lease on that quarter with which this

case deals. The trial court decided the action on the theory that this leasing of the east quarter by Kirk and Bedwell was a segregation of it from the original lease. It is urged by defendants that such is not the correct view, but that the development of the east quarter by the assignee of Kirk and Bedwell was sufficient to keep the entire lease in effect. This contention will be dealt with later in this opinion.

There is some testimony and the court found that from time to time Mr. Shaffer made demands upon Mr. VanPetten to make further developments on the west quarter and that Mr. VanPetten told him that he had nothing further to do with it and that he should see Kirk and Bedwell and that he stated further that in his opinion it would be a useless waste of money to drill on the west quarter.

In 1927 Mr. Shaffer, acting under the terms of R. S. 55-201, gave notice by publication to defendants that the lease was canceled. The trial court held that all the provisions of this section had been complied with. The trial court expressed some doubt as to whether the canceling of a lease under this statute was due process of law, but held that under the view taken of the case this question was not material. The court gave considerable weight to the proceeding, however, as showing conclusively that Mr. Shaffer considered his lessees had not complied with the terms of the original lease in so far as it related to the west quarter section.

In May, 1932, Mr. Shaffer gave a lease on the west quarter section to the plaintiffs. Soon thereafter they drilled three producing wells on it. The oil produced has been delivered to the Skelly Oil Company.

The defendants, some of whom are assignees of Haas and Van-Petten, set up a claim to the oil taken from the lease in question and served notice on the Skelly Oil Company not to pay plaintiffs for these oil runs.

That action on the part of defendants caused this suit. It was brought as a suit for a declaratory judgment. Many questions were propounded. The first one was, "Should the title and estate of the plaintiffs in the southwest quarter (SW¼) of section 31, township 23, range 14, in Woodson county, Kansas, under their said lease be quieted?" This question was answered in the affirmative. The court made several findings of fact, among them being the following:

"(19) The court also finds that the original lease executed November 16, 1917, was abandoned by the lessees and their assigns, in so far as the southwest

quarter (SW¼) of said section of lands was concerned, as there was nothing done toward developing the same for practically fifteen years."

Judgment was rendered accordingly by quieting the title of plaintiffs.

Defendants state their contentions in three propositions:

First. Could the landlord, under the circumstances stated, continue to accept royalties from the wells drilled on the east quarter, and treat the lease as abandoned on the west quarter section?

Second. Could the landlord forfeit the lease on the west quarter section under R. S. 55-201 without personal service of notice upon the lessees?

Third. Did not the covenants in the assignment reserving to the assignor the overriding royalty of one-eighth and requiring the assignee to do all things necessary to keep the lease in full force run with the land so as to bind persons dealing with the assignee?

The theory upon which oil and gas leases are based is that where one obtains a lease on land for the purpose of exploring for oil and gas he will explore and do whatever is necessary to obtain production. This is necessary in order that large blocks of leases may not be obtained and held for years without any pretense at exploration and development. Such a practice would lead to a failure of an oil field to be developed and result in great injustice to landowners. This was the theory of the court in the case of *Mills v. Hartz*, 77 Kan. 218, 94 Pac. 142. The syllabus of that case is as follows:

"Held, in a suit to cancel the lease, that it contemplated early exploration and operation, and a failure on the part of the lessee to begin operations for a period of about seven years is equivalent to a surrender by the lessee and gave the lessor the right to treat the contract as abandoned."

This has been consistently held to be the rule. (See *Collins v. Oil & Gas Co.*, 85 Kan. 483, 118 Pac. 54.)

In *Alford v. Dennis*, 102 Kan. 403, 170 Pac. 1005, the question of the abandonment of a lease was considered. The court said:

"Unless the plaintiff's tract was to be developed some time there was no reason to include it in the lease, and as it stands it is of no value to defendants. Unless the defendants had a *bona fide* intention to prospect and develop this tract they had no proper purpose in leasing it, and to cancel the lease will do them no injury. While equity abhors forfeitures, it likewise abhors injustice."

See, also, *Cole v. Butler*, 103 Kan. 419, 173 Pac. 978; *Day v. Pipe Line Co.*, 87 Kan. 617, 125 Pac. 43; also, *Howerton v. Gas Co.*, 81 Kan. 553, 106 Pac. 47.

In *Brown v. Oil Co.*, 114 Kan. 166, 217 Pac. 286, this court considered a case where the lease covered 2,347 acres and none had been developed but 320 acres. It was contended that the development of the 320 acres was sufficient to constitute development of the entire tract. While the court did not cancel the lease as to any of the acreage, it held that a further delay in drilling would warrant cancellation of that part which had not been developed.

Defendants cite these cases, but point out the fact that the court did not decree an absolute cancellation but made such an order as afforded the lessees an opportunity to drill if they saw fit to do so rather than to have their lease canceled. The distinction between the cases cited and this one is that in those cases the lessees were seeking to defeat cancellation and asking an opportunity to drill. Here the lessees have had the opportunity to drill for fifteen years and have not seen fit to do so. They have preferred to stand by and permit some one else to expend their money on the venture and now that it has proven profitable they are asking that the profits be paid to them rather than to the people who made the development possible. Such a position does not commend itself to what this court has concluded equity demands in the premises.

The underlying reasoning upon which these decisions are based is that where a reasonable time has elapsed for development and exploration, and the lessee has not seen fit to develop the lease, then no harm is done the lessees by canceling. A development that is not sufficient to ascertain what oil and gas is contained on the lease is no development at all. The case under consideration is a fitting example. The finding of the court with reference to the demands of Mr. Shaffer that Haas and VanPetten drill on the west quarter section and the refusal of these gentlemen to drill there is convincing that there would never have been any development on the west quarter if Shaffer had waited for Haas and VanPetten to bring it about. The wells were drilled on the east quarter and pumped about ten years, but still no drilling on the west quarter was done. Hence, it does no violence to reason to hold that there had been no development or exploration at all as far as the west quarter is concerned. Had the owner of the land brought an action to vacate the lease in question at any time during the fifteen years that the west quarter section lay without any drilling being done on it, there can be little doubt that defendants would have permitted judgment to be taken quieting the title. The fact that Bedwell and Kirk leased

the east quarter section to the people who actually drilled and held back the west quarter and refused to drill on it when importuned to do so by the landowner, while of not a great deal of legal significance in itself is of persuasive weight when considering the question of whether defendants actually intended to abandon the west quarter section. Apparently what happened was that defendants made a bad guess as to which quarter section had oil under it. The only way to ascertain this is by drilling wells. This costs money. Defendants did not care to spend the money necessary to drill the wells. They stood by and permitted some one else to do so. Now that the lease has proven valuable, defendants are asking that they receive the benefit of the expenditure of money and efforts of those who did think there was oil and gas under this lease. We hold that defendants are not entitled to such a judgment.

R. S. 55-201 was passed to meet situations such as this. Its provisions are as follows:

"When any oil, gas or other mineral lease heretofore or hereafter given on land situated in any county of Kansas and recorded therein shall become forfeited it shall be the duty of the lessee, his successors or assigns, . . . within sixty days after the date of the forfeiture . . . to have such lease surrendered in writing, such surrender to be signed by the party making the same, acknowledged and placed on record in the county where the leased land is situated without cost to the owner thereof: *Provided,* That if the said lessee, his successors, or assigns, shall fail or neglect to execute and record such surrender within the time provided for, then the owner of said land may serve upon said lessee, his successors or assigns, in person or by registered letter, at his last known address, or by publication for three consecutive weeks in a newspaper of general circulation in the county where the land is situated, a notice in writing in substantially the following form:

"To ———: I, the undersigned, owner of the following described land situated in ——— county, Kansas, to wit: (description of land) upon which a lease, dated ——— day of ———, 19——, was given to ———, do hereby notify you that the terms of said lease have been broken by the owner thereof, that I hereby elect to declare and do declare the said lease forfeited and void and that, unless you do, within twenty days from this date, notify the register of deeds of said county as provided by law that said lease has not been forfeited, I will file with the said register of deeds affidavit of forfeiture as provided by law; and I hereby demand that you execute or have executed a proper surrender of said lease and that you put the same of record in the office of the register of deeds of said county within twenty days from this date.

"Dated this ——— day of ———, 19——.

————————.

"And the owner of said land may, after twenty days from the date of service, registration or first publication of said notice, file with the register of deeds of the county where said land is situated an affidavit setting forth that the affiant is the owner of said land; that the lessee, or his successors or assigns

has failed and neglected to comply with the terms of said lease, reciting the facts constituting such failure; that the same has been forfeited and is void; and setting out in said affidavit a copy of the notice served, as above provided and the manner and time of the service thereof. If the lessee, his successors or assigns, shall within thirty days after the filing of such affidavit, give notice in writing to the register of deeds of the county where said land is located that said lease has not been forfeited and that said lessee, his successors or assigns, still claim that said lease is in full force and effect, then the said affidavit shall not be recorded but the register of deeds shall notify the owner of the land of the action of the lessee, his successors or assigns, and the owner of the land shall be entitled to the remedies now provided by law for the cancellation of such disputed lease. If the lessee, his successors or assigns, shall not notify the register of deeds, as above provided, then the register of deeds shall record such affidavit, and thereafter the record of the said lease shall not be notice to the public of the existence of said lease or of any interest therein or rights thereunder, and said record shall not be received in evidence in any court of the state on behalf of the lessee, his successors or assigns, against the lessor, his successors or assigns. (L. 1909, ch. 179, sec. 1; L. 1915, ch. 228, sec. 1; May 22.)"

Appellants argue that to hold a lease might be canceled by the notice provided for in the above sections would be to deprive the lessees of their property without due process of law. This section has been considered by this court, and while the constitutionality of it has not been passed on directly, the court has uniformly approved the operation of the statute. In *Elliott v. Oil Co.*, 106 Kan. 248, 187 Pac. 692, this court said:

"Section 1 of the act of 1909 (Gen. Stat. 1909, § 3921) was amended and elaborated in 1915 (ch. 228) by an act of two sections which cover the subject of forfeitures of leases, notice of forfeitures, duties of the register of deeds in relation to the record, and the legal effect of affidavits, etc., filed in his office."

Also,

"The first section of the act of 1915 . . . and the first section of the act of 1909, made it the duty of the holder of a forfeited lease to release it of record, but as to all else, in the act of 1915 . . . the subject covered has to do with a permissive procedure to show the status of the lease on the records of the register of deeds and for clearing the lessor's title of the apparent cloud or encumbrance of such lease."

In *Mollohan v. Patton*, 110 Kan. 663, 202 Pac. 616, this court again considered the section. There the court said:

"Here the plaintiff gave notice such as that described in the amendment, including a demand that the defendant execute and record a surrender of the lease, but did not make any separate demand for such release. The defendant argues that the demand incorporated in the notice was without effect save for the purposes of the amended first section of the act, and that a separate

demand was necessary as a preliminary to bringing the action; that the original first section required the discharge of a forfeited lease, while the amendment seeks to lessen the severity of such absolute requirement. We regard the demand for release made in pursuance of the amended section as a sufficient compliance with the provision of the last section of the act requiring such a demand to be made twenty days before an action is brought. It serves every purpose of the statute and advises the lessee as fully of the lessor's claim as though it were written on a separate piece of paper and had no other function than to lay ground for a suit. The statute does not require that the lessee be notified that he is to be sued—merely that at least twenty days before suit is brought a demand for a release be made. The addition to the original section does not relieve the lessee from the duty of causing the record to show that a lease has been forfeited where such is the case, but provides additional machinery for carrying out the original purpose, by requiring affirmative action on the part of the lessee to prevent the discharge of the challenged lease. Such has been the effect given to the statute heretofore. (*Cole v. Butler*, 103 Kan. 419, 173 Pac. 978; *Elliott v. Oil Co.*, 106 Kan. 248, 187 Pac. 692.)" (p. 666.)

These sections were enacted to provide a means by which landowners might rid their land of leases where these had been taken by people and corporations who had no idea of drilling. In many cases these people were transitory and took large blocks of leases and held them awaiting developments. They in many cases did little or nothing to develop the oil industry of the section. Their method of operation was to take the leases and wait until someone else had expended the money necessary to develop the field. We are not called on to pass on whether proceedings under the statute would be sufficient alone to cancel the lease in question, but when considered together with the other circumstances we hold that there was sufficient accompanying circumstances to put the defendants on notice that the landowner regarded the lease as abandoned on account of the failure of defendants to drill.

It will be remembered the court found that on or about September 22, 1932, Kirk and the heirs re-leased the lease assigned to them by the defendants, Haas and VanPetten. The court further found that this re-lease was a valid one and removed the lease from the records as to the west quarter. Defendants argue that these findings are wrong. Their argument is that the covenants in the assignments retaining in the assignor the overriding royalty of one-eighth of all oil produced and requiring the assignee to do all things necessary to keep the lease in full force ran with the land. They argue from this that the re-lease of Kirk and Bedwell of the lease from Haas and

VanPetten was of no effect to bar the rights of Haas and VanPetten in the lease.

This question was considered by this court in *Phillips v. Oil Co.*, 76 Kan. 783, 92 Pac. 1119. The court held:

"That a mechanic's lien will not attach to the interest acquired in lands by the lessee under an ordinary oil or gas lease notwithstanding oil or gas is discovered."

The following language was used in the opinion:

"An oil and gas lease conveys no present vested interest in the oil and gas in place. The interest conveyed is a mere license to explore—an incorporeal hereditament." (p. 784.)

The situation is the same as though any piece of property had been sold. Unless there is an agreement that the seller retains some title to secure the payment the seller has only a right of a personal action against the buyer. In the case of *Huston v. Cox*, 103 Kan. 73, 172 Pac. 992, this court said:

"Unless an ordinary partnership has been created, a mining partnership between cotenants of an oil and gas lease may exist only while they actually engage in working the property." (Syl. ¶ 2.)

"The property involved is an oil and gas lease. The lease is of the familiar kind granting the right to enter on described land, explore for oil and gas, and if oil and gas be found in paying quantities, to operate and produce. The decisions of this court are too numerous to require citation, that instruments of that character are not leases, in the strict sense. The term lease is applied to them merely through habit and for convenience. They create no estate in land, but merely a kind of license." (p. 74.)

See, also, *Robinson v. Smalley*, 102 Kan. 842, 171 Pac. 1155.

To summarize, we have concluded that Haas and VanPetten abandoned the lease on the west quarter section when they segregated it from the east quarter section and refused to drill on it for about fifteen years; that the action of the landlord operating under R. S. 55-201 was sufficient to cancel the lease of Haas and VanPetten on the west quarter section; that the re-lease executed by Kirk and the heirs of Bedwell on the west quarter section was a valid re-lease.

The judgment of the trial court is affirmed.