No. 32,741

LLOYD MANLEY GREENWOOD, *Appellant,* v. THE TEXAS-INTERSTATE PIPE LINE COMPANY, *Appellee.*

(56 P. 2d 431)

Opinion filed April 11, 1936.

*J. S. Brollier,* of Hugoton, for the appellant.

*W. E. Eddy,* of Hugoton, *G. J. Neuner* and *C. R. Kirkbride,* both of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

THIELE, J.: Plaintiff appeals from a judgment refusing cancellation of an oil and gas lease insofar as it affected his lands.

The cause was tried below on facts admitted by the pleadings, supplemented by an agreed statement of facts. From the admissions and statements the following appears:

Mr. H. Greenwood, father of the plaintiff, owned all of a certain section of land in Stevens county, Kansas. Under date of June 1, 1926, he executed and delivered to one Crawford an oil and gas lease covering the whole section. The lease provided, in part:

"It is agreed that this lease shall remain in force for a term of five years from date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee, and or if lessee shall commence drilling operations at any time while this lease is in force this lease shall remain in force and its terms shall continue so long as such operations continue with due diligence and if production results therefrom then as long as production continues."

Provision was made in the lease that if no well be commenced on or before June 1, 1927, certain delay rentals be paid.

The elder Greenwood died in March, 1929, intestate, and as a result of settlement between his heirs, the southwest quarter of the section mentioned was conveyed to plaintiff by warranty deed which warranted the real estate free of incumbrances except the above-mentioned oil and gas lease.

At a time or times not disclosed by the record, Crawford disposed of all or a part of his interest in the lease, and when this action was commenced defendant was the assignee of the gas rights in the north three fourths of the section, and the assignee of an undivided

one half of the oil and gas rights of the south one fourth of the section, or, so far as plaintiff's southwest quarter is concerned, the owner of the gas rights in the north half and the owner of an undivided half of the oil and gas rights in the south half. The record does not disclose ownership of the oil rights in the north three fourths of the section, nor of the other undivided one half of the oil and gas rights in the south one fourth thereof.

Some months prior to the expiration of the primary term of the lease and in February, 1931, defendant drilled a well near the center of the northeast quarter of the section which then and since produced gas in paying quantities. This well is connected to a pipe line. No drilling has been done on any other part of the section. On September 24, 1931, defendant filed in the office of the register of deeds an affidavit giving notice that it had drilled a gas well, producing gas in paying quantities, and was entitled to possession of the leased premises under said lease. This notice erroneously placed the location of the well on the northwest quarter of the section, and on April 27, 1932, defendant filed a second affidavit in which location was corrected to read northeast quarter of the section.

We are not advised whether royalties have been paid on account of gas produced, nor whether plaintiff in the family settlement of his father's estate retained his portion or disposed of it, but on or about December 14, 1933, he served a notice on defendant, reciting his ownership of the southwest quarter of the section, the lease to Crawford, stated the terms of the lease had been broken by the owner thereof; that he declared the lease forfeited and void and that if defendant did not within twenty days notify the register of deeds as provided by law that the lease was forfeited, he would file affidavits of forfeiture, and demanded that defendant execute and have recorded a proper surrender of the lease.

Sometime in January, 1934, plaintiff filed this action. His petition set up the execution of the lease by his father, that he obtained title by the settlement above referred to; that defendant had become owner of the interests in the lease as set out heretofore, referred to the affidavits as to production, alleged service of his demand for release, and alleged defendant's failure to comply. He further alleged that there being no production on his lands, the lease had expired by its terms; that one of the implied covenants was that his lands as well as other lands included in the lease should be drilled

and explored for oil and gas and not held indefinitely without exploration; he set up at length an alleged custom of drilling one well on each quarter section, and that defendant had knowledge of such custom at the time it acquired its leasehold interests; that had the instant lease been released he could have leased to other parties at the rate of one dollar per acre and because thereof he had suffered a loss of $480; that by reason of defendant's failure to file proper surrender of the lease he had been damaged in the sum of $100, and that he was entitled to a reasonable attorney's fee for preparation and prosecution of his action. His prayer was for forfeiture of the lease and for damages and attorney's fees.

Defendant's answer admitted many of the allegations of plaintiff's petition, denied the lease was subject to forfeiture or had terminated or that plaintiff had been damaged, and set up at length acquisition of its leasehold interest and its developments thereunder. Space forbids more than a reference to its allegation about the vast quantities of gas-producing lands in western Kansas; the lack of local demand or of facilities for transportation by pipe line. It also alleged effect of depressed economic conditions. It alleged that under the circumstances its development was reasonable, diligent, prudent and sufficient and for the best interests of the lessors and lessees under the lease, and that it had a valid and subsisting lease.

Plaintiff's reply admitted the facts pleaded as to conditions in western Kansas gas fields, and the limited market, also as to economic condition, but denied they constituted a defense.

The cause was submitted on the pleadings and agreed statement of facts, as well as on briefs of both parties. After consideration the trial court found in favor of defendant, and plaintiff appeals. No findings of fact or conclusions of law were requested. The trial court did, however, render an opinion in writing from which it appears that it held the duty to develop the lease under the implied covenant was—

"Whatever ordinary knowledge and care would dictate as the proper thing to be done for the interests of both lessor and lessee under any given circumstances is that which the law requires to be done as an implied stipulation of the contract."

that there was a showing there was no market for gas, if produced; that there is no suggestion or indication other producing wells adjacent to the land might drain the gas from plaintiff's property or

that there was any development of any kind in process; that drilling, under the circumstances, would have been at considerable expense to defendant and of no value to plaintiff. It further held the plaintiff stood in the same position as his father; that he inherited an interest in the entire lease; that his father could not deny receipt of consideration from the lease, and that if he had disposed of his interest except as to land he now owns, it was of no present concern. After discussing plaintiff's claim for damages, the court said:

"However, I am not deciding the case on this point, but upon the sole ground that the plaintiff has failed to show that he is entitled to an equitable forfeiture under the facts and circumstances of this case."

In consideration of an appeal in an action of the kind before us we start with the assumption that no special findings of fact having been made the trial court regarded as established all facts shown by the evidence which were favorable to the prevailing party. (*Gas Co. v. Jones,* 75 Kan. 18, 88 Pac. 537.)

It may also be assumed that it was the duty of the lessee, under implied covenant, to use reasonable diligence in the exploration and development of the leased premises so that the avails of production, if any, might reach the parties entitled, and that if some production is had during the primary term of the lease, the work of development and production must be continued with reasonable diligence and along such lines as are reasonably calculated to make extraction of oil and gas from the leased land of mutual advantage and profit to the lessor and lessee. (*Brewster v. Lanyon Zinc Co.,* 140 Fed. 801; *Nigh v. Haas,* 139 Kan. 307, 31 P. 2d 28.) In *Cole v. Butler,* 103 Kan. 419, 173 Pac. 978, it was said:

"It is now thoroughly settled law that such instruments carry the implied condition that operations shall be begun within a reasonable time. (Citing cases.)" (p. 421.)

And many of the cases hereafter mentioned hold to the same effect. While the trial court did not state at length the principle of law applicable, it is apparent that it was considering the admitted facts in view of the above cases and others cited therein.

Appellant relies on *Elliott v. Oil Co.,* 106 Kan. 248, 187 Pac. 692, that want of market for gas produced is not sufficient to excuse additional development. In that case, however, there was forfeiture of an entire lease, in which there was an express stipulation that "sixty days after both producing and drilling operations cease this

lease to be void and surrendered for cancellation." (Syl. ¶ 4.) There is no similar stipulation in the lease before us. In that case it was said:

"It was not suggested either in the trial court nor here that further forbearance on the part of the lessor would give the lessees any hopeful chance of finding a market for the gas. The lessees have simply quit, and while the courts always give a willing ear to any rational theory for avoiding a forfeiture, we can discern no way the trial court could have avoided a declaration of forfeiture in this case." (p. 252.)

*Howerton v. Gas Co.*, 81 Kan. 553, 106 Pac. 47, is often cited in connection with the question of implied covenant to develop. In that case a well was drilled which produced gas in marketable quantities, but the gas was not marketed. Other gas wells in the vicinity produced gas which was marketed. The lessee claimed that under its lease, it having paid the initial consideration, it was within its discretion to withhold the gas from market and to refrain from sinking other wells. In upholding a judgment of cancellation this court said:

"Ordinarily, when unnecessary delay becomes apparent, the lessor ought to call upon the lessee or party holding under him to do the things required under the lease, and to wait a reasonable time for such party to act. In this case the forfeiture was declared by notice, without previous warning. The attitude of the defendant, however, is such as to make the warning unnecessary. It claimed the right to hold this property without development, and offered no excuse for delay and no promise to proceed. It rested, after this long delay, upon its asserted legal right. In this situation it would be unjust to leave the plaintiffs without redress." (p. 564.)

In *Alford v. Dennis*, 102 Kan. 403, 170 Pac. 1005, the lease in question covered two separate tracts. There was considerable development of one tract, and none on the other which passed into separate ownership. The owner of the last tract brought action for cancellation because of failure to develop for a period of thirteen years. A demurrer to his petition was sustained and he appealed. This court said:

"The plaintiff asks the court to cancel this contract, to decree a forfeiture of it, and not for default of any expressed provision of the contract but merely for default of one of its implied covenants. The instances are rare where equity will enforce a forfeiture. It will never do so where less drastic redress will satisfy the demands of justice. (*Brewster v. Lanyon Zinc Co.*, 140 Fed. 801, 72 C. C. A. 213.) Forfeitures of oil and gas leases for breaches of mere implied covenants are seldom decreed. (*Davis v. Gas Co.*, 78 Kan. 97, 96 Pac. 47; *Brewster v. Lanyon Zinc Co.*, supra; Thornton on the Law Relating to Oil and Gas, 2 ed., §§ 91, 157.)" (p. 405.)

and sent the case back for determination of damages or in the alternative that the defendants be required to develop within a reasonable time.

In *Brown v. Oil Co.*, 114 Kan. 166, 217 Pac. 286, 114 Kan. 482, 218 Pac. 998, the action was to cancel part of an oil and gas lease of 2,347 acres of land because of nondevelopment. The lessee had expended large sums of money in developing a part of the leased land, pleaded adverse market conditions and expressed an intention to make further development. The evidence showed, however, there was successful and profitable production on adjacent lands on three sides of the leased real estate. The trial court refused cancellation and plaintiff appealed. This court reversed, directing that the lessee should be required to designate the part of the land it wished to develop, to commence work within a stipulated time and prosecute such work with reasonable diligence.

In *Nigh v. Haas,* 139 Kan. 307, 31 P. 2d 28, cancellation of part of a lease was upheld. There a part of the lease was assigned and the lands covered were developed. Although demand was made for development of the remainder, nothing was done. Ten years after the lease was given, the landowner gave notice, as provided by statute, that the lease was canceled on the undeveloped land. Later another lease was made on this part of the land, and operations under it were successful. Assignees of the original lease then asserted claims. This court, in affirming the trial court's judgment quieting title against the original lessees, held that they abandoned the lease on the tract in question when they segregated it by assignment of a part of their lease, and by refusal to drill on it for about fifteen years.

Space forbids a review of many other decisions of this court dealing with the general proposition of what state of facts warrants either absolute or conditional forfeiture of an oil and gas lease.

We may notice here appellant's claim that the trial court did not give sufficient weight to the alleged custom to drill one well on each quarter section. As we understand the trial court's written opinion, this custom would be of consequence only in determining what would be an equitable order, if there were breach of the covenant to reasonably develop. Assuming that evidence as to custom is admissible, we note the agreed statement only goes so far as to say that in determining location of a well, it is located as near the center of the quarter section as possible, and that it is customary to consider a

producing well so located as constituting full development. It is then stipulated that while this custom prevails as to location of wells, there are many instances where one well is considered full development of specified acreage, and a tabulation attached shows 28 wells as constituting development of tracts ranging from 240 to 840 acres. Our own calculation from this tabulation shows an average of one well to 382 acres as constituting full development. There is no showing as to the number of wells on 160-acre tracts in the territory covered by the tabulated tracts. We cannot say the trial court did not give the stipulation as to custom the weight to which it was entitled.

In view of the decisions noted, and they are as favorable to appellant's contentions as any cited or which our independent investigation has disclosed, did the trial court err in not ordering the lease canceled? Or is there such difference in the facts of the case at bar that it is not controlled by those cases? Although there may be other reasons therefor, some of those compelling reasonable diligence in extending exploration under an oil and gas lease are the migratory nature of the product sought, the fact that exploration and production from adjoining lands has the effect of draining the oil and gas from the leased but undeveloped real estate, and that failure to explore and obtain production, if any is to be had, results in loss to the lessor. Here no claim is made that there is either present production or exploration for future production on adjacent real estate, and nothing to indicate that oil and gas in place may not remain there for months, except as depleted through the one well now on the entire leased premises, and from which well, so far as the records show, plaintiff has his share as an heir of his father, the original lessor. And it must be noted that in those cases holding that lack of market and depressed business conditions do not excuse failure to use reasonable diligence in development, it has been shown either there was a market, or that production from adjacent leased lands was being marketed. And another matter is to be noted as bearing on the question whether reasonable diligence has been used. It is stipulated that when the instant lease was taken, the real estate covered and adjacent territory was wildcat territory, but thereafter wildcat wells were drilled and gas in paying quantities was found to underlie many hundreds of thousands of acres in Stevens county and adjacent counties; that only a small or limited amount of the gas said wells are capable of producing is being trans-

ported by a few pipe lines which have since been built into that territory, and because of the newness of the field and its enormous capacity and its distance from large centers of population sufficient markets have not been found or developed to market the possible production. There is no showing that, except as to plaintiff's lands, the field has been fully developed. Rather the inference to be gained is that it has not. .

The present action, although in part for damages, so far as forfeiture of the lease is concerned, is equitable in its nature. Forfeitures are not favored. (*Alford v. Dennis,* supra.) While it has been held that, under certain conditions, notice to explore is not a condition precedent to bringing an action for forfeiture, yet the fact a suit is brought without any demand having been made by the landowner upon the lessee that further development be made, has some bearing on the question whether the conduct of the lessee is such that the landowner is entitled to the rather harsh remedy of forfeiture.

Although not urged by appellant, the question arises whether the court should have made an order that lessee either extend development or surrender parts of the leased premises which it does not desire to develop. There are perhaps two answers. One is that appellant did not seek such an order. Another is that under the admitted facts it would be inequitable to compel drilling of another well on the leased premises, the cost of which would be burdensome to the lessee, and under conditions as disclosed by the record, of no benefit to the appellant.

A careful examination of the record does not disclose, the trial court erred in rendering judgment in favor of the defendant, and its judgment is affirmed.