No. 32,919

HARRY C. HARRIS and M. J. C. HARRIS, His Wife, LULU SUTTER and T. A. SUTTER, Her Husband (*Plaintiffs*), *Appellees*, v. THE MORRIS PLAN COMPANY, and THE LIBERTY NATIONAL BANK OF KANSAS CITY, Mo., *Defendants;* THE MILLS OIL COMPANY, Intervenor, *Appellants*.

(61 P. 2d 901)

502

Opinion filed November 7, 1936.

L. J. Bond, of El Dorado, W. D. Jochems, J. Wirth Sargent and Emmet A. Blaes, all of Wichita, for the appellant Mills Oil Company.

Stanley Taylor and K. M. Geddes, both of El Dorado, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This appeal is from a judgment canceling a part of an oil and gas lease because of failure to develop under the implied covenants of the lease.

The petition alleged that in August, 1925, the plaintiffs and Mattie Harris executed and delivered to one Christy an oil and gas lease for a term of five years and as much longer as lessee produces oil and gas from the land or the premises are being developed or operated. The lease covered the south half of section 14 and the northeast quarter of the northeast quarter of section 23, in township 27, range 7, Butler county, Kansas. Various assignments of the lease were made, and at the time the petition was filed, Phillips Petroleum Company had the lease on the southwest quarter of section 14. The records of Butler county showed that title to the lease on the southeast quarter of section 14 and the northeast quarter of the northeast quarter of section 23 was in the Morris Plan Company and the Liberty National Bank. It is with the two hundred acres last mentioned that this action deals. In July, 1927, Christy drilled a well in the southwest corner of the southeast quarter of section 14 which produced oil in paying quantities until in 1933; that thereafter oil was not produced regularly, and during 1933 the well and production therefrom were not handled in a good and workmanlike manner, and that in June, 1934, the well was abandoned, and since plaintiffs have received no income therefrom. It also alleged that since the drilling of the above well, oil and gas were produced and marketed from lands adjoining the leased premises on the north, south and west, and that Christy and his assigns permitted drainage of plaintiffs' lands and failed and refused to develop plaintiffs' lands with or-

dinary diligence and failed to protect these plaintiffs by drilling offset wells, etc., although request and demand were made, and that neither Christy, the defendant company nor the bank made any effort whatsoever to develop the leasehold except as to the one well mentioned; that by reason of the failure to develop, defendants breached and violated the express and implied covenants of the lease; that by reason of the premises the lease was expired and terminated, but constituted a cloud on plaintiffs' title. The prayer was for cancellation of the lease, for quieting plaintiffs' title and for equitable relief.

The Mills Oil Company intervened and filed its answer and alleged its ownership of the lease as to the southeast quarter of section 14 and the northeast quarter of the northeast quarter of section 23; that the well drilled in 1927 produced approximately 40,000 barrels of oil and that for some months prior to September, 1933, the average daily production was seven and one half barrels; that in September, 1933, trouble occurred at the well and it had since spent about $2,000 to overcome the trouble and was continuing its efforts. There are allegations as to developments on near-by leases, including costs and income; that since April, 1930, there was surplus oil production in Kansas; that the price was as low as thirty cents a barrel; that proration by the state and nation limited production, and that a well on the above lease would cost about $17,500, and in conjunction with other wells would cost $50 per month to operate, and that under present conditions a well drilled on the portion of the lease in controversy would not be a profitable investment. It prayed that its title under the lease be quieted and that it have equitable relief. We here observe that at no place in the answer is there any allegation that defendant intends to presently further develop the leased premises or any part thereof nor that if the court should so decree, further development would be undertaken and prosecuted.

At the trial there was no contention about the ownership of the land nor of the lease. Plaintiffs' evidence showed the drilling of the well by Christy in the southwest corner of the southeast quarter of section 14, in 1927, and that there had been no further development, and that they had received no returns from the lease since June, 1934, and that repeated demands for development had been made, and that plaintiffs had informed Christy, the manager of the Mills Oil Company, that other persons were willing to develop imme-

diately if the existing lease were released. We need not set out the testimony with respect to the amount of oil which the well produced prior to 1934. A plat was also introduced which showed existing oil wells on the leased premises and on other lands in the vicinity and that within a distance of three miles to the northeast there were at least twenty-five wells and within the same distance to the southeast there were at least thirty wells.

The intervenor's demurrer was overruled and it offered proof respecting the existing well, its production, the trouble that arose in June, 1934, and subsequent efforts to remedy it; that the value of the seven eighths of the oil produced was over $39,000 and the cost of the well and the expense of operation over $30,000 as of June, 1934; there was also considerable testimony as to the geological structure and the thickness of the oil sand; that there was no gas or water pressure; that the oil.sand was hard and compact; that there was little drainage, and the wells on other leases were not draining the leased premises; and that a well would only get the oil from a 600-foot-square area. Defendant's testimony was to the effect that at any price less than $1.50 per barrel a well could not be profitably drilled and operated, and that it would not be profitable for the Mills Oil Company to drill any wells on the lease in question at the time of the trial and would not have been since 1930. We shall not detail defendant's evidence as to cost of wells nor production received from other wells in the vicinity.

The trial court held that plaintiffs were entitled to a cancellation of the lease as to the 200 acres in question except as to a ten-acre tract including the oil well drilled thereon, and rendered judgment accordingly. The intervenor's motion for a new trial was denied and it appeals.

Briefly stated, the appellant presents four reasons why it claims the trial court's judgment is erroneous:

1. In the absence of demand for further development, the court should have given the holder of the lease a reasonable time to develop.

2. Where there was development on a part of the base lease, and an effort to reëstablish production from a well on an assigned part of the lease, should there be cancellation as to the undeveloped portion?

3. Whether, under the circumstances mentioned in (2), there should be cancellation when all the evidence was to the effect that further development would be unprofitable to the operator.

4. Whether the evidence, the substance of which was merely there had been no development, was sufficient to sustain the judgment, without some showing of equitable circumstances warranting such relief.

Before entering upon a discussion of these questions, it seems appropriate to repeat the statement made in *Greenwood v. Texas-Interstate P. L. Co.*, 143 Kan. 686, 690, 56 P. 2d 431:

"In consideration of an appeal in an action of the kind before us we start with the assumption that no special findings of fact having been made the trial court regarded as established all facts shown by the evidence which were favorable to the prevailing party. (*Gas Co. v. Jones*, 75 Kan. 18, 88 Pac. 537.)" (p. 690.)

and to remark in connection therewith that appellant's arguments ignore certain conclusions of fact which it must be presumed the trial court reached.

1. Under its discussion of its first proposition it is argued the trial court erred in decreeing cancellation without giving the defendant a reasonable time in which to further develop the leased premises. There was evidence that as to the 200 acres in question, from the time the lease was made in 1925, only one well was drilled, which produced until about June, 1934; that repeated demands for further developments had been made; that one well would only extract the oil from a 600-foot-square area.

The question of development under implied covenants of the lease was under consideration in *Greenwood v. Texas-Interstate P. L. Co.*, supra, where many of our decisions were reviewed, and where it was held:

"In an oil and gas lease, under implied covenant it is the duty of the lessee to use reasonable diligence in the exploration and development of the leased premises so that the avails of production, if any, may reach the parties entitled thereto, and if some production is had during the primary term of the lease, the work of development and production must be continued with reasonable diligence and along such lines as are reasonably calculated to make extraction of oil and gas from the leased lands of mutual advantage and profit to the lessor and lessee." (Syl. ¶ 1.)

Under that rule—and it was not the first expression of it—the trial court was warranted in holding the holder of the lease had not proceeded with reasonable diligence. The question of mutual advantage and profit will be discussed under paragraph 3. Insofar as the question pertains to cancellation without further opportunity to develop, the facts are that the answer did not plead any situation warranting such relief, nor was such relief prayed for; no witness

for defendant testified that further development would be undertaken in any reasonable time; on the contrary, defendant's witness, Christy, stated development would be unprofitable until oil reached a certain price, and that until such price was reached they didn't intend to drill unless they had to. It is true that forfeitures are not to be decreed where a less drastic remedy is available (*Alford v. Dennes,* 102 Kan. 403, 170 Pac. 1005), but where the lessee makes no pretense he would further develop if given the opportunity, he is not in a position to complain. (*Howerton v. Gas Co.,* 81 Kan. 553, 106 Pac. 47; *Elliott v. Oil Co.,* 106 Kan. 248, 187 Pac. 692.)

2. Appellant's second contention is that because the Phillips Petroleum Company was operating a part of the lease assigned to it, and appellant had drilled a well and had operated until June, 1934, and was now attempting to reëstablish the well, there was a continuance of operation and development under the lease, which, under *Cowman v. Phillips Petroleum Co.,* 142 Kan. 762, 51 P. 2d 988, was indivisible and therefore not subject to cancellation in part. Upon reference to the opinion, there will be found a state of facts dissimilar from that before us. There the lessee was attempting development of the portion of the land sought to be released, and was prevented by proceedings instituted by the holders of the real estate. With respect to forfeiture of the lease, it was said:

"Ordinarily equity will not decree a forfeiture by reason of failure of lessee or assignee to comply with an implied covenant to develop, without first giving party an opportunity to explore and develop, and this is especially true where party has attempted to develop and desires opportunity to continue." (Syl. ¶ 2.)

In the case before us there was a showing of development on three sides of the lands in question under leases and on lands owned by other parties; there was also proof that one well would drain the oil from a very limited area; there was demand for further development and refusal or failure to comply. So far as this feature of the case is concerned, it is more nearly controlled by *Nigh v. Haas,* 139 Kan. 307, 31 P. 2d 28, where part of an entire lease was assigned and developed; as to the remaining portion, although demand for development was made, nothing was done for a long period, and it was held there was an abandonment of that portion of the leased premises. Under appellant's version of what area one well would drain, and there was no showing but that it was aware of the fact since at least 1930, it would appear that appellant believed it could ignore the right of the landowner to have the

premises developed, that it could rest content with one well, and thereby hold the entire leased premises so far as it was assignee thereof. Carried to its logical conclusion, had it drilled no well at all its lease would have been kept valid, alive and enforceable by the development made by Phillips Petroleum Company on the portion of the lease assigned to it. Our decisions do not warrant any such conclusion.

3. The effect of the third contention is there should be no cancellation for violation of implied covenant to develop when there was evidence it would be unprofitable to the operator. In support of its contention, appellant relies upon the rule stated in *Greenwood v. Texas-Interstate P. L. Co.*, supra, and quoted above. What has been said about the implied covenant will not be repeated, although it must be borne in mind in determining whether the work has been continued with reasonable diligence along such lines as are reasonably calculated to make the result of mutual advantage to lessor and lessee. The latter part of the rule cannot be separated from the main context and read alone. Neither may it be stated conversely, and as thus stated, prescribe a rule of conduct. It cannot be read that unless the operation is profitable to the lessee he need not develop. Essentially, actions of this sort are equitable in their nature, and equitable principles must be applied. Here appellant contends that nothwithstanding there are at least twenty-five wells to the northeast, at least thirty wells to the southwest, notwithstanding the one well which was drilled proved profitable until trouble developed in it, it would have and will cost considerable money to drill other wells and it will not drill them until oil reaches a certain price, for they may not be profitable, and it was therefore justified in not proceeding. On the other hand, it is conceded that if a well is drilled and produces, there is a market for the product and the lessors' share will be of advantage and profit to them. When it is borne in mind that appellants' evidence shows that one well will drain only a limited area, it can be seen that the position taken by the appellant would have the result of its being permitted to hold the lease any number of years, during all of which time appellees would be deprived of any advantages from the lease. Appellant, in its brief, asks the question why, if the lease cannot be operated at a profit, it should oppose cancellation, and answers that it has a prospective future value. As we view it, that is not a sufficient answer. The lease was executed to provide development and not an opportunity for speculation.

4. The last contention that the evidence was insufficient to sustain the judgment without further showing other equitable circumstances entitling plaintiffs to cancellation has been largely answered by what has been said in discussing the other contentions. In arriving at its judgment the trial court considered the time the lease was granted, what was done to develop the premises under it during the primary term, what was not done during the primary term or since, the development of other leases in the vicinity, the refusal of the lessee to make further development until a certain price obtained for oil, its failure to offer to do anything presently, and from the whole concluded that in equity and good conscience it should no longer be permitted to retain its hold on that portion of the lease which it had not developed. We believe the conclusion reflected in its judgment is supported both by the facts and the equities inherent therein.

The judgment of the trial court is affirmed.