No. 47,489

CLARENCE SHAW and DORIS SHAW, *Appellees,* v. PATRICK E. HENRY, JR., *Appellant.* BRUCE D. BENSON, *Defendant.*

(531 P. 2d 128)

Opinion filed January 25, 1975.

*Alvin F. Grauerholz,* of Coffeyville, argued the cause, and *G. Richard Shaw,* also of Coffeyville, was with him on the brief for the appellant.

*Charles F. Forsyth,* of Fleming and Forsyth, of Erie, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: This appeal is from a judgment canceling an oil and gas lease covering some acreage in Montgomery County, owned by Clarence and Doris Shaw, plaintiffs herein.

On October 1, 1968, the Shaws leased the land for oil and gas purposes to Bruce D. Benson for a period of five years and as long thereafter as oil and gas were produced. At that time there were seven producing oil wells on the premises and one shallow disposal

well. For the most part, the lease appears similar to those in general use throughout the oil industry in this area, although no date was provided for commencing a well. Under the lease the Shaws were entitled to a one-eighth royalty.

Mr. Benson assigned the lease to Patrick E. Henry, Jr., the defendant and appellant on November 19, 1969, reserving a one-sixteenth overriding royalty.

Some three months later Mr. Henry received a "cease and desist" letter signed by Robert E. Williams, Area Geologist. The communication bore the letterhead of the Kansas State Department of Health, was dated February 16, 1970, and reads as follows:

"Mr. Patrick E. Henry, Jr.
Box 5
Dexter, Kansas 67038
      Re: Clarence Shaw Lease
      SE ¼ Sec 1, T35S, R16E
        Montgomery County, Kansas
Dear Mr. Henry:

A routine inspection of the above captioned lease revealed that a well is being pumped allowing the produced water to flow to a pond at the rate of 100 barrels per day, and there is no existing permit for the use of the pond. During a conversation with Mr. Shaw, we found that you are now the operator of this lease.

In accordance with Kansas Statute 65-171d, as amended in 1967, the Kansas State Board of Health is the licensing agency for oil field brine storage ponds, and the use of a pond without a permit is in violation of this Statute. We ask that the use of this pond be discontinued immediately since the amount of water involved is far in excess of the amount that could be handled in a pond. We also have had a history of water pollution in this area due to the loose underlying river gravel. If you wish to produce these wells, we recommend a disposal well into the Arbuckle formation, any other form of water disposal will be unacceptable due to the volume of brine and the nature of the underlying sediment.

               Sincerely yours,
               /s/ .Robert E. Williams
               Robert E. Williams
               Area Geologist"

Upon receipt of this ukase from the Department of Health Mr. Henry ceased all production from the lease. Henry's complete cessation of production displeased the Shaws who filed the present action against both Henry and Benson July 28, 1970, seeking to cancel the lease.

Trial was had to the court which ultimately entered findings of fact to the following effect: that Henry operated the lease as a

reasonably prudent operator and within the lease terms concerning drilling or payment of rentals; that he invested approximately $12,000 to develop the lease; that he was notified by the Department of Health to discontinue use of salt water disposal ponds and to install a salt water disposal well into the Arbuckle formation; that on receipt of the notice Henry ceased all production on the lease; that to properly operate the lease a salt water disposal well will have to be drilled into the proper formation to comply with the laws of Kansas; that Mr. Henry has finances available and is ready, able and willing to drill such a well within 30 days and to develop the lease to its producing potential within 180 days; and that Henry had caused $650 damages to the Shaws' wheat crops during 1970 and 1971.

The court concluded that a lessee operator of an oil and gas property has a duty to operate existing wells to the mutual profit of the landowner and himself, under an implied covenant which exists during and after the primary term of the lease; that Henry should be given the right to drill and equip a salt water disposal well to the Arbuckle formation and to develop, equip and produce the existing wells within 180 days from date of judgment (which turned out to be February 2, 1973); that on failure so to do the lease should be canceled, but on Henry's compliance the lease should be in full force during its primary term and as long thereafter as oil and gas is produced in paying quantities; and that the Shaws have judgment for $650. The court also found generally in favor of Mr. Benson and he is not a party to this appeal.

March 23, 1973, the plaintiffs filed a praecipe for special execution and the sheriff levied execution on Henry's oil and gas leasehold estate. The property was sold at public sale to Mr. and Mrs. Shaw, May 14, 1973, for the sum of $500. Henry did not learn of those proceedings until late May or early June, and on June 8, 1973, he filed a motion to void the sale. On July 6, 1973, the trial court heard Henry's motion and set the sale aside as being premature. At the same time the court granted an extension of time to August 7, 1973, for Henry to comply with the February 2 order. On August 6, the day before the extension of time expired, Henry's counsel filed an affidavit reciting that Mr. Henry had completed a producing oil well from the Arbuckle formation the day before, August 5, 1973. Eight days later the Shaws filed a motion alleging that Henry had failed to comply with the court's order of February 2, 1973, and that the lease should be canceled.

A hearing on the plaintiffs' last motion was had on September 7, 1973, at the conclusion of which the trial court ordered the lease canceled. Notice of appeal was filed the same date.

It appears to us that basically two questions are presented for answer: (1) Was the appeal taken in time and (2) was there a breach of implied covenant to develop the lease warranting cancellation? The defendant says "yes" to the first and "no" to the second, while the plaintiffs would turn the answers around, saying "no" to the first point and "yes" to the second.

Under Kansas practice an appeal may be taken to this court from a final decision of a district court by filing a notice of appeal with the clerk of the district court within thirty (30) days from the entry of judgment. (K. S. A. 60-2102, 2103.) The dispute here is over the date when final judgment was entered. The plaintiffs contend final judgment was entered February 2, 1973, when the court ordered that a disposal well would have to be drilled to the Arbuckle in order to operate the lease and gave Mr. Henry 180 days to drill and equip such a well. To support this argument, plaintiffs say all points raised by defendant refer to the February 2 order. In response, defendants say the court did not "cancel" the lease until September 7, 1973, but exercised continuing jurisdiction over the matter until that date, even granting Mr. Henry additional time to comply with its order. If plaintiffs' position is correct, the appeal comes too late; if defendant is right, the appeal was taken in time.

The question as to whether the trial court's decision of February 2, 1973, was final is not entirely free from doubt or ambiguity. However, we feel it unnecessary to decide the point for we believe the controversy may better be settled on the merits.

In its journal entry the trial court found, in effect, that the operator of an oil and gas lease has a duty to operate existing wells to the mutual profit of both the lessee and the landowner. The same finding is contained in the court's conclusions of law, and we believe it generally expresses the law in this area. In Cohen, Implied Covenants in Kansas Oil and Gas Leases, 9 Kansas Law Review 7, the author notes six implied obligations arising from the lessor-lessee relationship: to drill a well, to develop the leasehold, to explore the leasehold, to operate the leasehold efficiently, to protect the leasehold from drainage and to market the minerals produced.

A number of oil and gas cases have made their way to this court pertaining to the implied covenant to develop an oil and gas lease-

hold. It will not be necessary to cite them all; a few, we believe, will suffice. In *Temple v. Continental Oil Co.*, 182 Kan. 213, 320 P. 2d 1039, the court, speaking through Mr. Justice Schroeder, said:

"The doctrine in this state is now well established that what is required of a lessee, under the implied covenant to develop an oil and gas lease, is reasonable diligence in doing what would be expected of an operator of ordinary prudence, *in the furtherance of the interests of both lessor and lessee.* (*Fischer v. Magnolia Petroleum Co.*, 156 Kan. 367, 133 P. 2d 95; *Myers v. Shell Petroleum Corp.*, 153 Kan. 287, 110 P. 2d 810; and *Berry v. Wondra*, 173 Kan. 273, 246 P. 2d 282.) Under this rule neither the lessor nor the lessee of an oil and gas lease is the sole judge of what constitutes prudent development of the tract. . . ." (p. 220.)

The *Temple* case was soon followed by *Stamper v. Jones*, 188 Kan. 626, 364 P. 2d 972, where the same legal principles were generally expressed.

In *Renner v. Monsanto Chemical Co.*, 187 Kan. 158, 354 P. 2d 326, we discussed the standards which bind both the lessor and the lessee. On page 168 we had this to say:

". . . Whether a lessee has performed his duties under the implied covenants is a question of fact. In the absence of a controlling stipulation, neither the lessor nor the lessee is the sole arbiter of the extent to which, or the diligence with which, the operations shall proceed. The standard by which both are bound is what an experienced operator of ordinary prudence would do under the same or similar circumstances, having due regard for the interests of both (*Greenwood v. Texas-Interstate. P. L. Co.*, 143 Kan. 686, 56 P. 2d 431; *Harris v. Morris Plan Co.*, supra [144 Kan. 501, 61 P. 2d 901]; *Myers v. Shell Petroleum Corp.*, supra [153 Kan. 287, 110 P. 2d 810]; *Fischer v. Magnolia Petroleum Co.*, supra [156 Kan. 367, 133 P. 2d 95], Syl. ¶ 4; *Temple v. Continental Oil Co.*, supra)."

Our question, then, is whether the record contains substantial competent evidence to support the finding of the district court. (*Vonfeldt v. Hanes*, 196 Kan. 719, 723, 414 P. 2d 7.) We believe the question must be answered in the affirmative.

As we have said, the lease contains no provision for commencement of a well within any specified time or, in the alternative, for payment of delay rentals. There were, however, seven producing wells on the leasehold when Mr. Henry took over and as to these producing wells, as well as to leasehold itself, the duty of efficient management and operation was owed.

It was disclosed by the testimony given by Mr. Williams at the trial, as well as by his letter of February 16, 1970, that before those wells could be produced, a disposal well must be provided to dispose of the salt water they caused. Mr. Williams testified "the only

thing to do with that kind of salt water is to put it back into a disposal well or back into the same formation." The defendant has done neither, and so far as the record shows, none of the seven wells have been producing at any time since they were closed following receipt of the Williams letter.

Although we have been unable to find a case with facts identical to the case at hand, we can envisage few if any situations which would more greatly impede the reasonable and efficient operation of an oil and gas leasehold than would the failure to dispose of the salt water arising from existing wells, as required by order of the responsible state agency. Under the provisions of K. S. A. 1974 Supp. 65-171d the State Board of Health is authorized to protect the beneficial uses of Kansas waters; to protect them from pollution by oil, gas, salt water injection wells or underground storage reservoirs; to issue permits for storage or disposal of salt water and other pollutants; and to deny or revoke permits for salt water disposal ponds and facilities.

The trial court found it was necessary to drill a salt water disposal well in order properly to operate the lease. The court also found that Mr. Henry, as he himself stated, was ready, able and willing to d ill such a well within 30 days. Acting upon this finding the trial court, quite properly, gave Mr. Henry time in which to drill the disposal well, and thus protect the leasehold (*Howerton v. Gas Co.,* 82 Kan. 367, 108 Pac. 813; *Alford v. Dennis,* 102 Kan. 403, 170 Pac. 1005), the time being set, not at 30 days but at 6 months. We consider the time not unreasonable.

Mr. Henry places great stress on the fact he has drilled two producing oil wells, the first in July, 1971, and the second, August 5, 1973. The significance of these wells must be considered in the light of Henry's overall procrastinations. Production was shut down entirely on receipt of Williams' letter of February 16, 1970. Five months later no action had been taken to provide a disposal well or to bring the lease back into production and this lawsuit was filed July 28, 1970. For an additional twelve months the lease lay dormant and then, in July, 1971, Henry drilled what he said was to be a disposal well, but the well was a producer, so he said.

After July, 1971, no further efforts were made to provide a disposal well, and eventually the case came on for trial November 7, 1972, some fifteen months later. At the trial Mr. Henry told the court he could drill a salt water disposal well within thirty days,

whereupon the court granted him six months to do so, the time to run from February 2, 1973. But again Mr. Henry took no action for several months, and it was not until August 5, two days before his time expired, that he completed the second well—a producer also, not a disposal well. To the present time, as far as this court is advised, no disposal well has been drilled, nor have any of the original seven lonely little wells been given the chance to produce their oil. Mr. Henry's procrastinating and dilatory ways can be seen in his evasive tilting with the trial court during final hearing of this matter, September 7, 1973.

We are of the opinion that the trial court did not err in canceling the oil and gas lease, after first giving the lessee, Mr. Henry, six months to provide a disposal well and bring the lease back into production.

The judgment of the court below is affirmed.

SCHROEDER, J., dissenting: In my opinion it is arbitrary and unreasonable action by a trial court to cancel an oil and gas lease where the operator, within the time alloted by the trial court to drill a salt water disposal well, drills a well on the leasehold to completion, when the well turns out to be a producer of oil instead of a salt water disposal well. Whether a well drilled on a leasehold for oil and gas turns out to be a salt water disposal well as intended by the operator of the leasehold or a producer of oil is beyond the control of the operator. Under these circumstances the trial court should have given the operator of the leasehold an additional reasonable period of time to drill another well for the disposal of salt water.

During the period of time in question the salt water produced by the production of oil from the two wells drilled by Henry on the leasehold has been hauled away in trucks.

The law abhors a forfeiture. Here the Shaws benefit by a windfall of all production, over the one-eighth royalty reserved to the lessors, from all producing wells on the leasehold at the expense of the owners of the leasehold, Henry and Benson. In my opinion the decision of the court is unconscionable.

FATZER, C. J., joins the foregoing dissenting opinion.