LEE A. HOWERTON *et ux., Appellees,* v. THE KANSAS NATURAL GAS COMPANY, *Appellant.*

No. 16,292.

SYLLABUS BY THE COURT.

CONTRACTS — *Mineral Lease — Construction — Forfeiture — Insufficient Development—Remedy in Damages Inadequate.* An oil-and-gas lease reciting a consideration of $1 gave to the lessee the exclusive right to enter upon, operate for and procure oil and gas from 179 acres of land situated in the gas belt. The lease provided that if a well was not drilled on the premises within one year the lessee's right should cease. No alternative in payment of rent was given. The plaintiffs were to have gas for domestic use, if found in quantity sufficient to justify the expense of marketing, and were to be paid $50 per year during the time gas should be marketed from each producing well. One well was completed within the year, yielding gas sufficient for marketing as provided; the plaintiffs drew a supply therefrom for domestic use, and the defendant also used it for fuel to furnish power in drilling two wells on other leases. No other use was made of the well; gas was not sold or marketed from it; no other wells were drilled; and the lessors never received anything except the $1 and gas for their home. Several other gas wells were drilled on adjacent lands by the defendant and by other parties, from some of which gas has been and is being marketed. More than four years after

this well was completed the lessors served notice of forfeiture and commenced an action to cancel the lease. It is *held*: (1) That the contract contemplated that the well should be operated and gas marketed therefrom in a reasonable time, and that other wells should be drilled and operated with reasonable diligence to utilize the lease. (2) That four years' delay, in the circumstances shown, was unreasonable. (3) That the lessors have no adequate remedy in damages, and the lease should be terminated.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed January 8, 1910. Affirmed.

*Eugene Mackey,* and *John J. Jones,* for the appellant; *Jones & Reid,* and *Mackey & Sculley,* of counsel.

 *Baxter D. McClain,* for the appellees.

The opinion of the court was delivered by

BENSON, J.: This is an action to cancel an oil-and-gas lease, dated November 20, 1902, made by the plaintiffs to A. P. Gibson and by him assigned to the defendant gas company. The answer alleged that the defendant had performed all the covenants and conditions of the lease, and had never forfeited or abandoned it; and that the plaintiffs have an adequate remedy at law and have no grounds for equitable relief. The parts of the lease necessary to be considered are as follow:

"That the parties of the first part, for and in consideration of the sum of one dollar, to them in hand paid by the said party of the second part, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the said party of the second part to be kept and performed, do hereby lease and let unto the party of the second part the exclusive right for ten years from date hereof to enter upon, operate for and procure oil and gas upon the following described premises, situated in Allen county, Kansas, to wit [describing 179 acres of land]. . . . The party of the second part agrees to deliver to the parties of the first part one-tenth of the oil realized from these premises, in tanks at the wells, without cost, or pay the market price therefor in cash,

Howerton v. Gas Co.

at the option of the first parties. If oil or gas be found on these premises by the said second party, all rights, benefits and obligations secured thereby shall continue so long as either is produced in paying quantities by said second party.

"If gas is found in any well or wells in sufficient quantity, in the judgment of the party of the second part, or its assigns, for commercial purposes and in quantity sufficient to justify the expense of marketing same, said first parties to have on demand sufficient gas from such well or wells for domestic purposes on said premises, and said second party is to have the remainder thereof. If, however, second party shall sell or market gas from any well producing gas only, it shall pay said first parties or assigns therefor fifty dollars per year from and during the time such gas shall be sold or marketed, said payment to be made on each well within sixty days after commencing to market the gas therefrom and annually thereafter. Said second party agrees to locate all wells so as to interfere as little as possible with the cultivated portion of the premises, and pay all damages to crops by reason of its operation. . . . . In case no well be drilled for oil or gas on said premises within one year of date hereof, all rights and obligations secured under this contract shall cease upon notice in writing by said first parties, unless the second party shall elect from year to year to continue this lease in force as to all or any portion of said premises by paying in advance an annual rental of ―――― per acre for said premises or such portion thereof as it may designate, until a well is drilled on said premises. Said rental to be paid by deposits to credit of first parties in ―――― bank at Chanute, Kan."

A gas well was completed on the premises within one year after the date of the lease, having a capacity of from two to four million cubic feet of gas daily, producing gas in commercial quantities sufficient to justify the expense of marketing. No sale of gas has been made from this well, nor has it been used in any way, except that the company has taken fuel from it to furnish power to drill two wells on adjacent lands leased from others and the plaintiffs have used gas from this well for domestic purposes on the premises,

as provided in the lease. This use, however, has been somewhat impaired by reason of leakage from defects in casings or tubings. Neither the gas company nor its assignor has drilled or attempted to drill any other well on the premises or further to develop the same, and the lessors have received no payment or benefit except $1, paid on the execution of the lease, and the gas for domestic purposes. The premises are situated in the oil-and-gas belt of Allen county, and wells have been and are being drilled around such lands. Several wells have been drilled in the vicinity by the defendant gas company, and several wells by other companies. Some of these wells drilled by the defendant company are dry, and none of them is used. A number of the wells drilled by others are connected with a pipe line and are supplying gas thereto. These wells are in different directions from the premises, and are from one-half to one and one-half miles away. This development of the adjacent territory began in the spring of 1907. On December 17, 1907, the plaintiffs caused a written notice to be served upon the defendant gas company declaring the lease to be terminated for the failure of the defendant to comply with its terms and conditions and the abandonment of the premises, and giving notice that an action would be commenced to cancel the lease of record, and this action was commenced in pursuance of the notice. The court made findings of fact substantially as above stated, and held that upon the facts found and the evidence the plaintiffs in equity were entitled to a cancellation of the lease, and a decree was entered accordingly. The defendant gas company appeals.

The defendant contends that the consideration of $1 having been paid, a well drilled within the specified time, and the plaintiffs allowed gas for domestic uses, nothing further can be required until gas is marketed, when a payment will be due; and that the company may, in its own discretion, withhold the gas that

might be produced from this well from market, and refrain from sinking other wells. If this is a correct interpretation of the instrument, the plaintiffs must relinquish their expectation of yearly rentals from the well already completed, and from others that might be drilled in the reasonable development of their land, until the defendant shall see fit to proceed or the term expires. The grounds of this claim appear to be that the only ground of forfeiture stated in the lease is the failure to drill one well within a year, and therefore no forfeiture can be decreed for any other cause; and that if a covenant to produce and market gas and develop the property can be implied, the only remedy for its breach would be in damages.

It will be observed that this lease contains no provision for the payment of rentals for delay or failure to prosecute the work, as is often written in such instruments. The blanks in the printed clause designed to provide for such an alternative were not filled. In this respect the case may be distinguished from *Monfort v. Lanyon,* 67 Kan. 310, and several other cases in this court.

In construing a contract the court should consider all of its parts to ascertain the meaning of each particular part, and the intention of the parties deduced from the whole instrument is the controlling consideration. To find this intention the nature of the instrument itself, the situation of the parties and the objects in view will be considered to aid in the interpretation, but will not be allowed to contradict explicit terms. Applying these principles, the true intent of this agreement will be sought. In the first paragraph of the lease the lessee is given the "exclusive right . . . to enter upon, operate for and procure oil and gas" upon the premises. To accomplish this object it was provided that a well should be drilled in one year; one-tenth of the oil produced or its market value in cash should be delivered, and if gas was found in paying quantities, and it should,

be marketed, then $50 per year for each gas well should be paid to the lessors. All wells were to be located so as to interfere as little as possible with the cultivation of the premises. It is clear that the ordinary mind would infer from this, not only that one well should be drilled within the limited time, but that the gas therefrom, if found in paying quantities, should be produced and marketed for the mutual benefit of the parties, and that other wells would be drilled and operated in the reasonable development of the property for the purposes indicated in the lease. It is unreasonable to suppose that it was understood that the completion of one well, without operation or production, except to furnish gas for the plaintiffs' home, was all that the lessee was bound to do for more than four years, in which time, it might be fairly presumed, many wells would be drilled in near-by territory and gas marketed therefrom, as in fact actually occurred. If, however, the terms of the writing require such an interpretation it must be so made, for the contract must govern, however disappointing to the expectation of parties. The meaning of similar instruments has been frequently considered by courts and writers.

In a valuable case note in 11 L. R. A., n. s., 417, a clear statement of the rule of interpretation applied to such instruments is thus made:

"Generally all leases of land for the exploration and development of minerals are executed by the lessor in the hope and upon the condition, either express or implied, that the land shall be developed for minerals; and it would be unjust and unreasonable, and contravene the nature and spirit of the lease, to allow the lessee to continue to hold under it any considerable length of time without making any effort at all to develop it according to the express or implied purpose of the lease; and, in general, while equity abhors a forfeiture, yet, when such a forfeiture works equity, and is essential to public and private interests in the development of minerals in land, the landowner, as well as the public, will be protected from the laches of the lessee and the forfeiture of the lease allowed, where

such forfeiture does not contravene plain and unambiguous stipulations in the lease.   This principle will be more readily enforced and applied by the court as to gas-and-oil cases because of the peculiar nature of those minerals and the danger of entire loss to the lessor of oil or gas in his lands by reason of well drilling on adjacent lands."   (Page 418.)

This statement is grounded in right reason, and is supported by the authorities.

"In grants of the character in question, the title is inchoate, and for the purpose of exploration only, until oil or gas is found in quantities warranting operation; and while the courts manifest a disposition to protect the grantee at this stage by treating his interest as no longer postponed to the happening of a condition precedent, yet it is thoroughly settled that he can not omit to develop the property and hold the grant for speculative purposes purely."   (*Gadbury v. Ohio, etc., Gas Co.*, 162 Ind. 9, 14.)

"It would be unjust and unreasonable, and contravene the nature and spirit of the lease, to allow the lessee to continue to hold his term a considerable length of time, without making any effort at all to mine for gold or other metals.   Such a construction of the rights of the parties would enable him to prevent the lessor from getting his tolls under the express covenant to pay the same, and deprive him of all opportunity to work the mine himself or permit others to do so.   The law does not tolerate such practical absurdity, nor will it permit the possibility of such injustice."   (*Conrad v. Morehead*, 89 N. C. 31, 35.)

In an action arising in this state the circuit court of appeals of the eighth federal circuit construed an oil-and-gas lease in a lengthy opinion, in the course of which it was said:

"Light will be thrown upon the language used, and the intention of the parties will be better reflected, if consideration is given to the peculiar and distinctive features of the mineral deposits which are the subjects of the lease.   Oil and gas are usually found in porous rock, at considerable depth under the surface of the earth.   Unlike coal, iron and other minerals, they do not have a fixed situs under a particular portion of the

surface, but are capable of flowing from place to place and of being drawn off by wells penetrating their natural reservoir at any point. They are part of the land, and belong to the owner so long as they are in it, or are subject to his control; but when they flow elsewhere, or are brought within the control of another by being drawn off through wells drilled in other land, the title of the former owner is gone. So, also, when one owner of the surface overlying the common reservoir exercises his right to extract them, the supply as to which other owners of the surface must exercise their rights, if at all, is proportionally diminished." (*Brewster v. Lanyon Zinc Co.*, 140 Fed. 801, 809.)

Many cases involving the application of this principle are cited with approval in *Huggins v. Daley*, 40 C. C. A. 12, 99 Fed. 606. Quotations were made from that case in *Mills v. Hartz*, 77 Kan. 218, where this subject was incidentally considered. The quotations need not be repeated here. It was held in the Mills case that it was the duty of the lessee under such a lease to make a diligent search within a reasonable time. Mr. Chief Justice Johnston said:

"The only consideration moving to the lessor for the right which he gave to the lessee to explore and procure minerals was the royalty on the coal to be found and the fixed compensation for each well when gas should be found and utilized, together with sufficient gas to supply two stoves in his farmhouse. If there were no search, nor any product, no possible benefit could come to the lessor for the exclusive rights which had been given to the lessee. . . . The lease contemplates that the lessee shall proceed to dig and bore for gas, oil and coal, and that the lessor shall obtain gas for his farmhouse, not twenty years hence, but as soon as it can reasonably be procured. It is contemplated, too, that the compensation for each gas well shall be paid annually and not at some remote period." (Page 220.)

It is difficult to distinguish in principle between a case like that, where the default consists in failure to explore at all, and a case like the present one, where a well has been drilled and the gas found but no effort has been made to utilize or market it. The result to

Howerton v. Gas Co.

the lessor is the same in either case, except that in the
latter he has the satisfaction of knowing that his
premises are capable of production. But this is a bar-
ren result if his expected returns therefor may be in-
definitely postponed at the will of the lessee.

It is urged, however, that even if covenants to pro-
ceed with the marketing of gas and developing the
territory are to be implied, the remedy for a breach is
in damages and not by forfeiture of the lease. It has
been said that a breach of an implied covenant will not
work a forfeiture of a lease. (Thornton, Oil & Gas,
§ 91; *Harris v. The Ohio Oil Co.*, 57 Ohio St. 118.) But
this is not a rule of universal application. (*Logan
Natural G. & F. Co. v. Great Southern G. & O. Co.*, 126
Fed. 623.) If the remedy in damages is impracticable
and a forfeiture in the given case is not unconscionable,
and the forfeiture must be decreed to prevent injustice,
the power of a court of equity to grant it can not be
doubted. In some of the cases where this remedy has
been allowed it was applied upon the principle that the
implied covenant to proceed with the work is in effect
a condition subsequent, for the breach of which a for-
feiture will be declared where the equities of the case
require it.

"The duty to develop the property upon the discovery
of oil or gas in paying quantities is not to be regarded
as a mere implied covenant, but, in a case like this,
where practically the whole consideration must depend
upon the implied undertaking, is to be treated as a
condition subsequent. . . . Forfeitures are usually
against conscience and without equity, and it is for
these reasons that courts of chancery ordinarily refuse
relief in such cases, but an exception to the rule must
exist where it is against equity to permit the defendant
longer to assert his title. . . . The lack of any
other remedy, and the danger that the gas might be
withdrawn through wells on other lands, makes a case
of this kind appeal to the conscience of the chancellor,
and calls upon him to enforce the incurred forfeiture by
removing the cloud from the title." (*Gadbury v. Ohio,
etc., Gas Co.*, 162 Ind. 9, 14, 15.)

36—81 KAN.

The supreme court of Tennessee, in an opinion by Mr. Justice Lurton, in construing a mineral lease held that if the compensation to be paid a lessor depended upon the profit to result from the working of the mine, and the lessee is not bound either expressly or impliedly to work it, then there is no consideration for the lease and it is void. It was held, however, that there was an implied covenant in the lease then under review. The court said:

"But if the contract be construed as binding the lessee to 'test' the leased lands within three years, and as requiring the working of such 'tested' tracts within a reasonable time, then it must be very evident that under leases of this character both of these provisions are *conditions* upon which the lease depends. If the contract had fixed a money rent in case of failure to 'test' or 'work,' and the payment of such rent or penalty is not made a cause of forfeiture, the rule would be different. . . . The testing provided for in such case was of the very essence of the contract, not only with respect to the time within which it was to be done, but as to the thoroughness and certainty with which the mineral value of the lands should be ascertained. . . . The 'testing' provided for was manifestly a condition upon which the lease depended. If such test showed no minerals, then the contract was at an end; if it, on the other hand, showed the presence of valuable mines, then the lessees were bound to operate them in good faith for the joint profit of themselves and the owners of the fee. Technical words are unnecessary to raise a condition. If a fair and reasonable construction of the instrument shows that a lease shall depend upon the doing or not doing something essential to the purposes of the contract, the law implies the condition." (*Petroleum Company v. Coal, Coke, and Manufacturing Company*, 89 Tenn. 381, 388, 389.)

In *Brewster v. Lanyon Zinc Co.*, 140 Fed. 801, it was said, after referring to the stipulations of the lease:

"These provisions make it plain that it was the intention of the parties to make the covenants of the lessee conditions as well as covenants, and to reserve to the lessor the right to avoid the lease for the breach of any of them." (Page 812.)

(See, also, *Eaton et al. v. A. G. Co.*, 122 N. Y. 416; *Foster v. Elk Fork Oil & Gas Co.*, 90 Fed. 178; *Munroe v. Armstrong*, 96 Pa. St. 307.)

Whether the obligation to produce and market gas should be considered as an implied covenant, as that term is ordinarily used, or as a condition, or both, is of little consequence. The principle is more important than the name, and is clearly applicable to the situation here presented. That there is no adequate remedy in damages is quite clear. The covenant, or condition, here broken was not a pecuniary obligation to pay rent, nor could the damages consequent upon the default be ascertained with any reasonable certainty. The amount of gas which could have been produced and marketed by the exercise of proper diligence or the amount diverted therefrom by wells on surrounding lands could not be ascertained. The breach promised to be a continuing one. Whether one action or many actions for damages might be necessary was wholly problematical.

In *McGraw Oil & Gas Co. v. Kennedy*, [W. Va. 1909] 64 S. E. 1027, it was held, in a case involving a lease of this nature, that a forfeiture could not be decreed upon an implied covenant to drill other wells; but the judge who wrote the opinion expressed his own views thus:

"I have never been reconciled to the doctrine that for failure to drill additional wells the lessor must sue at law for damages, and equity will not cancel unless for draining from near-by territory and thus exhaust oil in the leasehold involved. I have asked: How many actions must the landlord bring? How can damages be measured? How can we see into the depth of the earth? But it has been so held." (Page 1029.)

Adopting the view so clearly equitable, and supported both by reason and authority, we hold that the contract contemplated that the well should be operated and gas marketed therefrom, and that other wells should be drilled and operated in a reasonable time to utilize the lease; that the performance of this obligation was neglected for an unreasonable time, to the injury of the

plaintiffs; that in such a situation an action for dam-
ages affords no adequate remedy; and that equitable
relief ought to be granted. Ordinarily, when unneces-
sary delay becomes apparent, the lessor ought to call
upon the lessee or party holding under him to do the
things required under the lease, and to wait a reason-
able time for such party to act. In this case the for-
feiture was declared by notice, without previous warn-
ing. The attitude of the defendant, however, is such
as to make the warning unnecessary. It claimed the
right to hold this property without development, and
offered no excuse for delay and no promise to proceed.
It rested, after this long delay, upon its asserted legal.
right. In this situation it would be unjust to leave the
plaintiffs without redress.

The mere use in their home by the plaintiffs of gas
from this well can not bar them from relief. The de-
fendant was making no use of it, and it was drawn from
the plaintiffs' own premises, in their own possession.
It can not be claimed that the quantity was sufficient
materially to diminish the resources of the territory.
Besides, the defendant did not evince a purpose to mar-
ket the gas in any reasonable time, and the surrender of
the right would have been of no benefit to it. The case
is unlike one where a party receives rents while claim-
ing a forfeiture.

The general nature of contracts of this character,
commonly called leases, was stated in *Gas Co. v. Neosho
County,* 75 Kan. 335, but as there is no standard form
each instrument must be interpreted in the light of its
own provisions. In *Monfort v. Lanyon,* 67 Kan. 310,
*Rose v. Lanyon,* 68 Kan. 126, *Brick Co. v. Bailey,* 76
Kan. 42, *O'Neill v. Risinger,* 77 Kan. 63, and *Davis v.
Gas Co.,* 78 Kan. 97, the leases provided for rentals on
failure to drill wells as stipulated, and in view of that
provision and upon the particular facts of each case it
was held that forfeitures ought not to be adjudged. In
*Rawlins v. Armel,* 70 Kan. 778, *Gas Co. v. Jones,* 75
Kan. 18, *Betterment Co. v. Blaes,* 75 Kan. 69, *Mills v.*

*Hartz,* 77 Kan. 218, and *Development Co. v. Smith,* 77 Kan. 832, cancellations were approved principally upon the ground of abandonment, and the reasoning of the opinions, so far as applicable to the facts under consideration here, support the conclusions reached in this case. The legal proposition stated in the second part of the syllabus in the Rose case is undoubtedly true as a general rule, and is especially true as applied in that case to a clause in the lease providing that the lessors should be furnished with gas from other premises of the lessee. Damages for such a breach could be readily ascertained.

The district court did not in terms find that the lease had been abandoned, although the findings and conclusions are not inconsistent with that view. Whether the evidence warrants such a finding need not be discussed, since the decree may be upheld upon the ground of forfeiture for failure to perform the principal obligations resting upon the lessee for which the lease was given. This, it is believed, was the view taken by the trial court in the conclusion that the lease should be cancelled.

The judgment is affirmed.