**AMOCO PRODUCTION COMPANY, a corporation, Plaintiff,**

v.

**DOUGLAS ENERGY COMPANY, INC., et al., Defendants.**

No. 82–1865.

United States District Court, D. Kansas.

June 26, 1985.

Judson S. Woodruff, John A. Kenney, Eugene Kuntz, Oklahoma City, Okl., Larry Withers, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., Charles T. Krol, Mary Haskins, Denver, Colo., R.H. Frick, Chicago, Ill., for plaintiff.

Don O. Concannon, Concannon, Traster & Concannon, Hugoton, Kan., Gary Johnson, Dotson, Babcock & Scoefield, Houston, Tex., David Fist, Rosenstein, Fist & Ringold, Tulsa, Okl., for defendants.

Craig R. Carver, Gibson, Dunn & Crutcher, Denver, Colo., for defendant Douglas Energy Co., Inc.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case is presently before the court for consideration of Amoco's motions for summary judgment, to dismiss defendants' counterclaim and for a ruling on the burden of proof. The court has reviewed the record including the voluminous memoranda presented in support of the various motions and has heard oral argument. For the reasons stated below, the court is persuaded the motion for summary judgment should be denied and the motion to dismiss should be granted.

The net result of the ruling concerning the burden of proof proposed by Amoco would be to deny the defendants the statutory presumption created by K.S.A. 55–224. The court has reviewed that statute and concludes that it should be applied retroactively. Accordingly, Amoco's motion to rule on the burden of proof will be denied as to defendants' counterclaim.

This case concerns the natural gas and oil resources located in southwestern Kansas, commonly known as the Hugoton field, where Amoco holds mineral leases granted by the defendant landowners or their predecessors in interest. These leases contain the standard habendum clause which provides they shall continue for as long as oil or gas is produced in paying quantities. Amoco has drilled shallow gas wells on these leaseholds and contends such production is sufficient to hold the leases by production under the habendum clause. Defendants allege there are considerable oil and gas reserves in deeper formations which Amoco has not developed. In 1981 and 1982, defendant Douglas Energy Company obtained top leases to a sizeable portion of Amoco's leaseholdings. Amoco has filed the present lawsuit as a result of the Douglas top leasing program.

### I. Motion to Dismiss

Plaintiff's motion to dismiss addresses the question whether defendants' amended counterclaim, alleging speculation and abandonment, states viable claims for re-

lief. Dismissal of defendants' claims pursuant to Fed.R.Civ.P. 12(b)(6) is inappropriate unless it appears that the defendants can prove no set of facts that would entitle them to the relief requested. *Kensell v. State of Oklahoma,* 716 F.2d 1350 (10th Cir.1983).

■ Defendants' position that a cause of action of speculation is cognizable under Kansas law is in part based on the principle that in Kansas, as in other jurisdictions, holding leases for speculative purposes is condemned. "Leases of this kind contemplate exploration and development, and not the bottling up of land for speculative or other purposes or the postponement of reasonable development...." *Webb v. Croft,* 120 Kan. 654, 657, 244 P. 1033, 1035 (1926). As is apparent from the *Webb* decision, and other cases, speculation is often conceptually linked to the implied covenant of exploration and development. *Harris v. Morris Plan Co.,* 144 Kan. 501, 61 P.2d 901 (1936); *Alford v. Dennis,* 102 Kan. 403, 170 P. 1005 (1918). *See also* 5 E. Kuntz, *A Treatise on the Law of Oil and Gas,* §§ 58.3 at 74, 62.1 at 184 (1978); H. Williams and C. Meyers, *Oil and Gas Law,* §§ 842.1, 842.3 (1983). Speculation is a policy consideration underlying the obligations imposed by this implied covenant, not a recognized separate cause of action. Permitting the assertion here of both speculation and the implied covenant to develop and explore would, in view of Kansas case law, be similar in many ways to allowing, in a tort context, assertion of both negligence and failure to exercise due care as separate and distinct claims.

■ As an alternative basis for recognition of an independent claim of speculation, defendants suggest that the facts may compel forfeiture even if they would not indicate that Amoco has violated the prudent operator standard. It is argued that holding deep rights indefinitely until a change in technology, price or other economic development is evidence, under a broader "relational contract" theory, of a complete breakdown of the contract. Defendants contend such opportunistic behav-

ior on the part of the lessee would justify unconditional forfeiture, without prior demand and notice, even where the lessee was acting as a prudent operator.

In support of this proposition, defendants suggest that the Kansas Supreme Court might subscribe to the recent Colorado Court of Appeals ruling in *North York Land Associates v. Byron Oil Industries, Inc.,* 695 P.2d 1188, VIII Br.T.Repr. 1227 (Colo.App.1984). There, the court affirmed the trial court's cancelling of a non-pooled area of a lease for breach of the implied covenant to explore and develop. The rationale for this result, however, was not that the lessee failed to perform as a prudent operator. The trial court had found that a prudent operator would not explore or develop the leasehold. Rather, the court affirmed cancellation based upon the finding that the lessee was holding the land for speculation.

There are several observations which can be made about the *North York Land* case. First, the claim asserted was breach of the implied covenant to explore and develop. Second, the court's treatment of profitability in testing compliance with this implied covenant runs counter to well-established law in Kansas. *See, e.g., Sanders v. Birmingham,* 214 Kan. 769, 522 P.2d 959 (1974). Finally, regardless of the test employed to determine whether the implied covenant has been breached, demand, or its futility, remains a prerequisite for forfeiture. *See* Section II, *infra.* The trial court in *North York Land* found that the lessor made verbal demands for further development, and that the responses received created a reasonable belief that further demands would have been futile. Other cases defendants cite which address speculation similarly raise implied covenant claims and do not support the proposition that demand, or a showing of futility, is unnecessary for unconditional forfeiture.

■ Defendants' alternative counterclaim of abandonment is closely related to the claim of speculation in the sense that both focus on Amoco's alleged opportunistic behavior in postponing exploration and

development, and under both claims demand and notice is allegedly not an issue. Defendants support the viability of the abandonment claim primarily on the basis of their interpretation of the recent Kansas Supreme Court case of *Rook v. James E. Russell Petroleum, Inc.*, 235 Kan. 6, 679 P.2d 158 (1984). There, the Kansas court refers to Dr. Merrill's description of certain situations where abandonment may be confused with breach of an implied covenant. *See* Merrill, Covenants Implied in Oil and Gas Leases §§ 8, 9 (2d ed. 1940). The court states: "The second situation ... is where the lessee consciously intends to give up the lease and commits some positive act of abandonment. This is true abandonment ... The third situation ... is where there has been no act done to demonstrate an intention to abandon but the lessee intends to postpone work of development while keeping the lease." *Id.* at 16, 679 P.2d 158. Defendants contend it is not entirely clear which of these theories is applied in *Rook*, that both are species of abandonment, that under either theory demand and notice is unnecessary, and that the facts of that case closely parallel the case at bar.

After closely reviewing the *Rook* case, and after hearing oral argument, the court is not inclined, as it once indicated it might be, to reconsider its view of the applicability of this decision. Despite the unusual factual circumstances, the holding of *Rook* appears clear and indicates that termination, without demand and notice, is appropriate under facts supporting a finding of true abandonment. The court is not persuaded by defendants contention that the *Rook* court may be applying Merrill's "third situation" mentioned above, where the lessee does not intend to relinquish rights under the leases, but rather to postpone development indefinitely.

The case presents, as the Kansas court observes, an unusual situation involving two leases "under which production ceased but which were nevertheless continued in force and effect by the express provisions of the habendum clauses ... relative to gas storage rights." *Id.* at 17, 679 P.2d 158.

Lease assignments had effectively severed the gas storage portion of the leases from the oil and gas production portion. Exercise of the gas storage rights continued the leases, creating a situation where reference to the implied covenant of diligent and prudent operation was appropriate, despite the cessation of production. It was the lack of any ongoing production, however, which distinguished *Rook* from other implied covenant cases, and similarly distinguishes *Rook* from the instant case.

The supreme court approved the trial court's determination that the oil and gas production portion of the leases was severable, and that the evidence clearly supported a finding of abandonment of the production portion of the leases. Upon a finding of abandonment, termination without prior demand and notice was an appropriate remedy. The court states:

The foregoing written acknowledgment and undertaking by Russell, in the assignment, coupled with Russell's positive acts which followed, all clearly support the finding of the trial court that Russell and his assignee abandoned these leases. Russell's actions supporting the trial court's conclusion include terminating production of all wells on these two leases with no further production activity on these leases for fifteen years, permitting equipment left on the property to rust and deteriorate, tearing down and removing the pump house after it was partially demolished in a storm, removing the power source equipment, and not physically going onto the premises in any manner after 1972.

Having abandoned the production of oil on these two leases, Russell and his assignee cannot now be heard to say those in privity with the lessor were required to demand and give notice that production be continued prior to termination of these leases for breach of the implied covenant of diligent and prudent operation.

*Id.*, 235 Kan. at p. 19, 679 P.2d 158.

In this court's opinion, the *Rook* case poses a substantially different factual set-

ting, and the Kansas court does not apply, or recognize, an alternative theory of abandonment distinct from that characterized as "true abandonment." The court in *Rook* recognizes, as does Dr. Merrill in his treatise, that the abandonment theory has, on occasion, been referred to where the facts might more appropriately call for reference to the implied covenant of exploration and development. *See, e.g., Nigh v. Haas,* 139 Kan. 307, 31 P.2d 28 (1934). Where the implied covenant theory is correctly applied, prior demand and notice to the lessee, or a showing of futility, is a prerequisite to entry of a decree of unconditional forfeiture. Defendants' amended claims of speculation and abandonment, as asserted, do not state independent, viable claims for relief.

## II. Motion for Summary Judgment

To decide the motion for summary judgment, the court must consider the evidence in a light most favorable to the defendants and judgment will not be granted where different inferences can reasonably be drawn from the evidence presented. In order to obtain summary judgment the plaintiff must prove entitlement to judgment beyond a reasonable doubt. *Madison v. Deseret Livestock Co.,* 574 F.2d 1027 (10th Cir.1978).

Amoco has moved for summary judgment as to its second and fifth claims and on defendants' counterclaim. Amoco's second claim requests a declaration that Amoco is under no duty to release any part of a lease held by shallow production. Amoco's fifth claim requests the court to direct Douglas to release its top leases on lands covered by Amoco leases held by production. The defendants' remaining claim seeks forfeiture or other appropriate relief from the Amoco leases based upon the alleged breach of the implied covenant to explore and develop. Amoco cannot be entitled to the relief sought if the defendants may be entitled to forfeiture or other appropriate relief. Therefore, the resolution of these claims rests on the sufficiency of the defendants' remaining claim.

In addition, Amoco has renewed its contention that the language of Douglas Energy's top leases constitutes a cloud on Amoco's title. The court declines to reconsider its order of February 11, 1983. The top leases may be fairly read as becoming effective only upon a determination the underlying leases have terminated, as to the formations for which relief is sought.

To obtain forfeiture for a breach of an implied covenant, the lessor must first make a demand upon the lessee to comply with the particular covenant. *See, e.g., Robinson v. Continental Oil Co.,* 255 F.Supp. 61 (D.Kan.1966). This is so because forfeitures are not favorites of the law. *Storm v. Barbara Oil Co.,* 177 Kan. 589, 282 P.2d 417 (1955). Amoco argues strenuously that no unsatisfied demand has been made, and that without prior demand, defendants may not maintain an action for breach of the implied covenant to explore and develop. However, absence of a demand is not dispositive of whether defendants have stated a claim. The Kansas Supreme Court in the case of *Alford v. Dennis,* 102 Kan. 403, 170 P. 1005 (1918) remanded a case involving breach of an implied covenant to explore and develop to the trial court even though no demand had been made. The supreme court directed the trial court to set aside its prior ruling and to allow the plaintiff a monetary award, if damages could be determined, or in the alternative to require the lessee to proceed in good faith to develop the leasehold within a reasonable time. The language of the court is particularly significant. "While equity abhors forfeitures it likewise abhors injustice." 102 Kan. at 406, 170 P. 1005. In suggesting an alternative decree without prior demand the supreme court said "[w]e think this lawsuit will answer the purpose of a demand for drilling...." 102 Kan. at 407, 170 P. 1005. While this is, as plaintiff suggests, a somewhat dated opinion, it is, nevertheless, the most recent statement of the Kansas Supreme Court on this particular issue. *See also Rook v. James E. Russell Petroleum, Inc.,* 235 Kan. at 17–18, 679 P.2d 158; *How-*

*erton v. Gas Co.*, 82 Kan. 367, 108 P. 813 (1910).

■ The recent published decision of the Kansas Court of Appeals, provided to the court by Amoco, is typical of the more recent cases in the area. Demand is recognized as a prerequisite for forfeiture but not established as a requirement for a cause of action for breach of an implied covenant. *Cheyenne Exploration, Inc. v. Ingram*, No. 56,277 unpublished (Kan.App. April 4, 1985). The lack of demand will not, therefore, absolutely bar defendants' recovery on their counterclaim. The court is vested with broad powers to fashion an equitable remedy. This remedy may be forfeiture or if no demand has been made, the court may provide Amoco with a reasonable amount of time to comply with the implied covenant of development or face forfeiture. *Alford v. Dennis*, 102 Kan. at 407, 170 P. 1005; *see also* K.S.A. 55–226. Assuming no demand has been made by some or all of the defendants, the court is not precluded from awarding this conditional forfeiture upon finding a breach of the implied covenant to explore and develop.

■ The defendants may be excused from the demand requirement if it is apparent from the acts of Amoco that it would have been futile to make such a demand. In another early case, the Kansas Supreme Court said that although, ordinarily, the lessor ought to call a breach to the attention of the lessee before forfeiture is awarded, such a warning is unnecessary where the attitude of the lessee is such as to make the warning unnecessary. *Howerton v. Gas Co.*, 81 Kan. 553, 106 P. 47 (1910) *rev'd on other grounds*, 82 Kan. 367, 108 P. 813 (1910); *see also Superior Oil Co. v. Devon Corp.*, 604 F.2d 1063 (8th Cir.1979) (relying in part on Howerton). As this court has previously stated, the question is not simply whether Amoco had an intent to further develop, but whether that intent was manifested to the lessors in such a fashion as to lead them to reasonably believe that a demand for performance would have been a futile, useless act.

Memorandum and Order of May 31, 1984, Dk. No. 224.

■ The defendants have presented evidence which they contend demonstrates the futility of making a demand on Amoco. Amoco argues this evidence is irrelevant and does not establish futility. The evidence includes statements by individuals who have made demands which were either rejected or satisfied after lengthy delay, testimony by local attorneys that demand was futile, and deposition testimony by an officer of Amoco which the defendants contend shows that demand was, in fact, futile. Admittedly, the evidence is subject to different interpretations, and different inferences may reasonably be drawn therefrom. At this stage, however, it is sufficient that the defendants have raised a genuine issue of material fact. Summary judgment is inappropriate where factual issues remain. Fed.R.Civ.P. 56(c).

### III. The Kansas Deep Rights Act

In 1983 the Kansas legislature enacted a statute which codifies the implied covenant to explore and develop minerals. K.S.A. 55–223. The statute also creates a presumption that the covenant has been breached where no minerals have been produced from the subsurface formations for which relief was sought and shallow oil, gas or other mineral production on the lease in question had commenced at least 15 years prior to the commencement of the lawsuit. The plaintiffs contend this statute does not apply to this case. For the reasons stated below, the court disagrees.

The Kansas Deep Rights Act, K.S.A. 55–223 to 229, is for the most part, a codification of existing law. Section 223 codifies the implied covenant to explore and develop. The only material change resulting from the passage of the Deep Rights Act was the creation, in section 224, of an evidentiary presumption which shifts the burden of proof to the lessee to establish compliance with the implied covenant. Section 226 provides for substantially the same remedies available under prior law. *See Alford v. Dennis* and related discus-

sion, *supra.* The act does not apply to the interval between the surface and the base of the deepest producing formation, K.S.A. 55–227, and Section 229 expressly states that substantive rights and remedies will not be altered or affected by the Deep Rights Act.

Liability for breach of an implied covenant to explore and develop under Kansas law prior to the Deep Rights Act has been determined by application the prudent operator standard. *Rush v. King Oil Co.*, 220 Kan. 616, 556 P.2d 431 (1976). The Kansas Supreme Court has not yet addressed the Deep Rights Act in detail, however there is no language in the statute which would alter this standard and the statute expressly does not alter substantive rights. The Kansas Supreme Court has cited to the statute without further comment as authority for the proposition that the prudent operator standard applies to implied covenants. *Parkin v. Kansas Corporation Commission*, 234 Kan. 994, 677 P.2d 991 (1984). The court, therefore, concludes the prudent operator standard remains the law in Kansas under the Deep Rights Act.

The parties are in apparent agreement that the statute has no effect on the existing law of Kansas concerning the requirement of demand as a prerequisite for forfeiture, despite some dispute as to what the existing law is. The court agrees. There is no indication in the statute or in other authority that the legislature intended to modify existing law in that regard. Demand remains a prerequisite for forfeiture as described above.

■ In a case based, as this one is, upon diversity of citizenship, substantive state law is applied in order to ensure that the results of the case do not depend on whether the suit was tried in federal rather than state court. *Casto v. Arkansas-Louisiana Gas Co.*, 562 F.2d 622 (10th Cir.1977). For this reason, the court must, consistent with the provisions of the United States Constitution, apply the Deep Rights Act as the Kansas courts would apply it. The court is persuaded the Kansas Supreme Court would apply the Deep Rights Act to pending litigation and therefore will apply it to this case.

■ Ordinarily, in diversity cases substantive issues are determined by state law and procedural issues are determined by federal law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Even though legislation generally acts prospectively only, under Kansas law if it affects only procedures or remedies without changing the substantive rights of the parties, a newly enacted statute may be applied in pending litigation. *See, e.g., Olathe Community Hospital v. Kansas Corporation Commission*, 232 Kan. 161, 652 P.2d 726 (1982). Although the same comparison, substance to procedure, is used in both *Erie* and Kansas cases concerning application to pending litigation, the words substance and procedure are not necessarily of common definition. *See Casto v. Arkansas-Louisiana Gas Co., supra.* In determining the applicability of the statutory presumption to pending litigation, the distinction between procedural and substantive issues must be according to state law. To hold otherwise would certainly violate the *Erie* doctrine, possibly resulting in a presumption that would apply in state but not federal court. The burden of proof relates not to duties or obligations under the leases but is a part of the law of evidence which determines how those duties and obligations may be enforced. The courts of Kansas have long held the legislature may change rules of evidence even as to existing cases. *See Jones v. Hickey*, 80 Kan. 109, 102 P. 247 (1909). For this reason, except for the choice of law question arising from the *Erie* doctrine, burden of proof is a procedural issue.

■ Amoco's reliance on *Cities Services Oil Co. v. Dunlap*, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196 (1939) for the proposition that burden of proof is substantive for all purposes is misplaced. In *Cities Services* the court of appeals had refused to apply the Texas rule concerning burden of proof in a lawsuit involving a challenge to title of real property. The Supreme Court, relying on *Erie Railroad Co. v. Tompkins*, re-

versed, requiring the Texas rule to be applied. As indicated above, for *Erie* purposes state law concerning burden of proof is indeed substantive. *See* 1A J. Moore, *Moore's Federal Practice,* ¶ 0.314 (1985). It may well alter the outcome of the case. Yet Amoco would have the court rely on *Erie* doctrine analysis to hold that a Kansas statute does not apply in this case which was pending at the time it was enacted. The court will not permit such an incongruous result.

■ Amoco contends application of this statute violates Article 4, Section 4 of the United States Constitution, which guarantees each state a republican form of government. The constitutionality of a state statute is ordinarily presumed. *Davies Warehouse Co. v. Bowles,* 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635 (1944). Amoco argues application of the Deep Rights Act in this case would be an exercise of judicial power by the legislature and is thus impermissible. The court will not interfere with the internal allocation of power within the state of Kansas. This presents a nonjusticiable question. *See Baker v. Carr,* 369 U.S. 186, 221–24, 82 S.Ct. 691, 712–13, 7 L.Ed.2d 663 (1962). The court is aware of the scholarly opinion of Chief Justice Schroeder of the Kansas Supreme Court which holds certain separation of powers questions justiciable but finds his analysis inappropriate here. *See VanSickle v. Shanahan,* 212 Kan. 426, 511 P.2d 223 (1973). *VanSickle* involved a state court analyzing the constitutionality of a proposed amendment to the state constitution under the United States Constitution. This case, on the other hand would require a federal court to make a subtle analysis of the allocation of power within the state of Kansas. The court will not, therefore, hold the Deep Rights Act in violation of U.S. Const.Art. IV § 4.

■ Nevertheless, if Kansas would hold the statute in violation of the doctrine of separation of powers as defined by state law, the *Erie* doctrine requires that the statute not be applied here. The application of the Deep Rights Act to pending litigation is not a violation of the doctrine of separation of powers as stated by the Kansas courts. A Kansas statute violates the doctrine of separation of powers if it permits one department to usurp the powers of another department on the specific facts and circumstances presented. *State v. Greenlee,* 228 Kan. 712, 620 P.2d 1132 (1980). Amoco's theory is apparently that application of the Deep Rights Act in the present litigation would permit the legislature to usurp the power of the courts by interference with a vested right. This argument is without merit. Amoco has no vested right in any particular procedure. *Board of Greenwood County Commissioners v. Nadel,* 228 Kan. 469, 618 P.2d 778 (1980). Amoco has impliedly covenanted to reasonably explore and develop the leasehold. The duties and obligations which arise under that covenant and the standards for determining the breach of that covenant are unchanged. The Deep Rights Act merely alters the procedure for establishing a breach when one is alleged.

■ Amoco's other constitutional arguments are similarly without merit. The Deep Rights Act does not impose significant additional liabilities upon Amoco. *Cf. Allied Structural Steel v. Spannaus,* 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978) (statute found to add new liabilities which were significant and unexpected). The implied covenant of development has existed in substantially the same form throughout the terms of leases involved. The statute expressly states that it will not alter or affect the substantive rights or remedies under the lease whether established by common law or the statutes of the state of Kansas. The Deep Rights Act does not in any way prevent Amoco from enforcing any right under the leases nor does it leave Amoco without a remedy. When faced with a similar issue the United States Supreme Court remarked "[t]hat such a statute does not offend against either the contract clause or the due process of law clause of the Constitution, even where the change is made applicable to pending causes, is now well settled." *Reitler v. Harris,* 223 U.S. 437, 442, 32 S.Ct. 248, 249, 56 L.Ed. 497 (1912). In the *Reitler* case as in the present case, the legisla-

ture of the state of Kansas had enacted a statute which created a rebuttable presumption. Such a presumption does not unconstitutionally impair Amoco's contract rights or violate the requirements of due process.

Circumstances exist where legislation may be applied to pending cases as an exercise of the state police power even if the contract is, in fact, impaired. *See, e.g., Energy Reserves v. Kansas Power & Light,* 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983). It is unnecessary for the court to address that question here, however, because Amoco's substantive rights under the leases remain unchanged. If fairly possible, a statute will be construed to avoid constitutional questions. 459 U.S. at 410, 103 S.Ct. at 704.

IT IS THEREFORE ORDERED that Amoco's motion to dismiss defendants' counterclaim is granted as to the claims of abandonment and speculation.

IT IS FURTHER ORDERED that Amoco's motion for summary judgment is denied.

IT IS FURTHER ORDERED that Amoco's motion for a ruling concerning the burden of proof is denied as to defendants' counterclaim and the Kansas Deep Rights Act, K.S.A. 55–223 to 229 will apply in this case.