(199 P.3d 180)
No. 98,859

DAVID ALAN LEWIS and KAREN LEWIS, Husband and Wife, *Appellees*, v. KANSAS PRODUCTION COMPANY, INC., *Appellant*, and WILDCAT ENERGY, INC., MARK W. MCCANN, and MARICELA E. MCCANN, *Defendants*.

Opinion filed January 16, 2009.

*John R. Horst*, of John R. Horst, P.A., of Caney, for the appellant.

*Gary House*, of Sedan, for the appellees.

Before STANDRIDGE, P.J., PIERRON and GREEN, JJ.

PIERRON, J.: After a bench trial, the district court terminated Kansas Production Company's (KPC) oil and gas lease on David and Karen Lewis' land for KPC's breach of the implied covenant to explore and develop the lease. The court found that KPC received no demand for development before this lawsuit was filed. It also found that KPC's failure to explore or develop the land for 6 years negated the prior demand requirement for cancellation. KPC appeals the termination. It seeks remand for an order of conditional cancellation to allow it a reasonable time to comply with the implied covenant. We reverse and remand.

The Lewises own land in Chautauqua County that has been leased for oil and gas production since 1972. The original lease, called the Raymon lease, is a recorded burden on the Lewises' land. The Lewises purchased the land in 2005 from David and Deborah Lowe.

In 1994, the owner of the Raymon lease was Randy Roberts. He divided the lease into upper and lower subterranean portions. Roberts retained the upper portion for himself and assigned the lower

portion to Mark McCann. Roberts uses his portion of the Lewises' land to produce oil, and he has done so continuously since before 1994. McCann has held his interest in the Lewises' land either personally, through his wife Maricela, or through McCann-controlled companies since the 1994 assignment. KPC has held McCann's interest in the Raymon lease since 1998. McCann is "a shareholder or principal officer" of KPC.

In December 2004, the Lowes demanded that KPC release its lease-interest. They cited as the reason for release breach of "the implied covenant to produce [KPC's] portion of said oil and gas lease." Except for the phrase explaining the reason for the release, their demand letter was identical to the statutory form contained in K.S.A. 55-201. This lawsuit commenced in May 2005.

McCann admitted at trial that he never took steps to develop his portion of the Raymon lease. He explained that he did not believe he had to develop the Lewises' land because he was already actively developing or producing neighboring acreage covered by the original Raymon lease. McCann testified he was unaware that an implied covenant to explore and develop the land existed, and he had not developed the Lewises' land because he had more-pressing deadlines in other fields.

In April 2007, nearly 2 years into this lawsuit, McCann obtained a commitment from MOKAT, Inc., to drill a test well on the Lewises' land. He did this to show that he intended to develop the land. McCann also pointed to his partial financing of gas lead lines into the area where the Lewises' land is located as evidence of his intent to develop the lease.

McCann testified that he believes he can produce a profitable gas well on the Lewises' land.

David Lewis testified that he did not want further oil or gas production on his land. Lewis wanted to clear the Raymon lease burden on his title.

In its written order, the district court succinctly characterized this case as one where "suit has been brought to terminate the lease without any demand having been made by the landowner upon the lessee that further development be made." The court did not address the effect of the Lowes' K.S.A. 55-201 form letter in

its order. However, it found that "the Defendants have presented no credible evidence explaining [their] failure to develop the lease and that to grant . . . a conditional cancellation would in this case serve no useful purpose . . . and would merely delay the inevitable lease termination." It further found that McCann and KPC had done "absolutely nothing to reasonably develop the lease premises." Therefore, the court ruled that "upon the many years of nonproduction or exploration [of this lease, prior demand for compliance] shall not be a condition precedent to bringing an action for forfeiture and that the conduct of the Lessee Defendants . . . is such that the landowner . . . should be entitled to the remedy of forfeiture."

KPC filed a motion for reconsideration which the district court denied after a hearing. At that hearing, the judge explained his ruling:

"I guess to simplify it, actions speak louder than words. You know, I did hear some words about an intent or a desire to drill and complete a well and possible producing of paying quantities of gas in that particular horizon [owned by the defendants,] but all during this lease there's been no action and I think it's fruitless to continue this matter."

The lease in question contained no specific time provisions for development.

The parties agree that the so-called "Kansas Deep Horizons Act" governs this lawsuit. That Act, K.S.A. 55-223 *et seq.*, implies in all oil and gas leases a covenant "to reasonably explore and to develop the minerals which are the subject of such lease." K.S.A. 55-223. This covenant is a burden on the lessee and "any successors in interest." K.S.A. 55-223. The parties agree that the implied covenant was breached in this case because, at the time the Lewises commenced this lawsuit, KPC was not producing oil or gas on their land pursuant to the Raymon-lease interest, and initial production on the Lewises' land began 15 years before the commencement of this lawsuit. See K.S.A. 55-224. The district court found that KPC had breached the implied covenant.

The dispute in this case is over the appropriate remedy. KPC wants a "conditional cancellation" of the lease, and it requests an order for a "reasonable time" to drill a well and begin production.

The Lewises want no further development of their land, and they are using this breach-of-covenant action as a vehicle to eliminate KPC's leasehold interest.

The district court based its order cancelling the lease on "statutory law." The court held that it had "authority under the statute to issue an order terminating the lessee's right to said subsurface parts as are the subject of the lease. The Court in the alternative may enter an order as the interest of the parties in equity may be appropriate." The court did not cite the statute to which it was referring. But, it is obvious that it based its decision on the authority of K.S.A. 55-226. That statute provides remedies for breach of an implied covenant to explore or develop a lease as follows:

"If the court determines that the lessee has failed to comply with [the implied covenant to explore and develop], the court may grant the lessee a reasonable time in which to comply, or the court may issue an order terminating the lessee's right to such subsurface part or parts as are the subject of such action. The court may enter such other orders as the interests of the parties and equity may require." K.S.A. 55-226.

The parties agree that resolution of this case depends on the appellate court's interpretation of K.S.A. 55-226. Although other Kansas cases have addressed the exact remedy presented by this case and under similar circumstances, no case has previously interpreted K.S.A. 55-226, nor do any of the relevant precedents rely on this statute for authority. Therefore, this case presents an issue of first impression insofar as the interpretation of K.S.A. 55-226 is concerned.

The parties correctly acknowledge that statutory interpretation is a matter over which the appellate court exercises unlimited review. See *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1031, 181 P.3d 549 (2008). The intent of the legislature governs statutory interpretation, if that intent can be ascertained. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). Statutory language is the primary source for ascertaining legislative intent. *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007). "When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it." *In re K.M.H.*,

285 Kan. 53, 79, 169 P.3d 1025 (2007). That is, we will not " 'supply vital omissions in a statute' " because "[n]o matter what the legislature may have really intended to do, if it did not in fact do it, under any reasonable interpretation of the language used, the defect is one which the legislature alone can correct." *Kenyon v. Kansas Power & Light Co.*, 254 Kan. 287, 292-93, 864 P.2d 1161 (1993).

As mentioned above, the Lewises are seeking cancellation of KPC's lease interest in their land, not compliance with the lease. Historically, cancelling an oil and gas lease was an extreme remedy. Because cancelling a lease works a forfeiture, courts have usually required a landowner to demand compliance with the implied covenant to explore and develop before granting the landowner's request to cancel an oil and gas lease.

However, K.S.A. 55-226 says nothing about demand for compliance before a court may cancel a lease for breach of the implied covenant to explore and develop. It merely presents a court with alternatives. That is, a court has authority under the plain language of K.S.A. 55-226 to either "grant the lessee a reasonable time in which to comply" *or* "terminat[e] the lessee's right" to the land covered by his lease. The district court chose the latter. Was this reversible error?

When the legislature enacts legislation, we presume that it intends to change preexisting law. See *State v. McElroy*, 281 Kan. 256, 263, 130 P.3d 100 (2006). This is true even where the common law has a preexisting rule, because the appellate court defers to statutory language when it conflicts with the common law. K.S.A. 77-109; *O'Grady v. Potts*, 193 Kan. 644, 647, 396 P.2d 285 (1964). So, at first glance, it seems that the district court here was well within its statutory authority to cancel KPC's lease on the Lewises' land even without a demand by the landowner.

However, and interestingly, K.S.A. 55-229, the last section in the Deep Horizons Act, reads: *"This act shall not alter or affect substantive rights or remedies* under any such mineral leases *under the common law. . . .* The evidentiary presumption afforded by this act shall be cumulative . . . to all other substantive rights and remedies in existence under the common law." (Emphasis added.)

.

Statutes must be read as a whole, with a view toward reconciling provisions where possible. *State v. Breedlove*, 285 Kan. 1006, 1015, 179 P.3d 1115 (2008). Also, we presume that the legislature does not intend to enact useless or meaningless legislation. *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 (2006). K.S.A. 55-229 indicates that K.S.A. 55-226 is merely a codification of the preexisting common-law remedy of cancellation with all of its common-law requirements. Also, giving the plain language of the first sentence of K.S.A. 55-229 its common-sense effect requires that the K.S.A. 55-226 remedies be interpreted and applied in compliance with preexisting common law. Accordingly, a brief catalogue of Kansas' common law on this point (cancellation of an oil and gas lease for a lessee's failure to develop) is in order to understand our interpretation of K.S.A. 55-226.

The appellant relies on *Amoco Production Co. v. Douglas Energy Co., Inc.*, 613 F. Supp. 730 (D. Kan. 1985), which reached the same conclusion: that K.S.A. 55-229 preserves the common-law remedies for breach of an implied covenant in their original form. In the court's words, "Section 226 provides for substantially the same remedies available under [Kansas'] prior [common] law," and "Section 229 expressly states that substantive rights and remedies will not be altered or affected by the Deep Rights Act." 613 F. Supp. at 736-37. We will further discuss this case below.

In 1918, the Kansas Supreme Court set down the basic format for remedying a lessee's failure to develop his or her lease interest. In *Alford v. Dennis*, 102 Kan. 403, 404, 170 P. 1005 (1918), the lessor appealed an adverse summary judgment order in his suit to cancel an oil and gas lease for the lessee's failure to develop the land for 13 years. Before filing his lawsuit, the plaintiff did not demand production or exploration from the lessee. The Supreme Court remanded the case for trial, noting that "[t]he instances are rare where equity will enforce a forfeiture" and that "it will never do so where less drastic redress will satisfy the demands of justice." 102 Kan. at 405-06. The court ruled that "we think this lawsuit will answer the purpose of a demand for drilling." 102 Kan. at 407. It held that a trial court should first order damages, if such can be ascertained. If damages are inappropriate or unascertainable, a

court should order a lessee to develop the lease in good faith and in a reasonable time period. Failing that, the court should cancel the lease. 102 Kan. at 407.

In 1936, the Kansas Supreme Court refined this outline. In *Greenwood v. Texas-Interstate P. L. Co.*, 143 Kan. 686, 694, 56 P.2d 431 (1936), the court recognized:

"While it has been held that, under certain conditions, notice to explore is not a condition precedent to bringing an action for forfeiture, yet the fact a suit is brought, without any demand having been made by the landowner upon the lessee that further development be made, has some bearing on the question whether the conduct of the lessee is such that the landowner is entitled to the rather harsh remedy of forfeiture."

The *Greenwood* court recognized one circumstance where "notice to explore is not a condition precedent" to forfeiture: futility. Referring to an older case, *Howerton v. Gas Co.*, 81 Kan. 553, 106 P. 47 (1910), the court recognized that forfeiture could be granted where a lessee's actions or attitudes make a previous warning unnecessary. *Greenwood*, 143 Kan. at 691. Where a lessee claims a right to hold property without development or explanation for delay, and he or she refuses to explore or develop the property, " 'it would be unjust to leave [lessor] without redress.' " 143 Kan. at 691 (citing *Howerton*, 81 Kan. at 564). Accordingly, cancellation or forfeiture of a lease is appropriate where demand for compliance would be futile. 143 Kan. at 691.

The Supreme Court further refined oil and gas forfeiture law in *Rook v. James E. Russell Petroleum, Inc.*, 235 Kan. 6, 679 P.2d 158 (1984). In that case, the court identified two situations commonly confused with breach of an implied covenant to develop. The first situation is where a lessee breaches a lease term by failing either to drill or to pay delay rent. This is not abandonment, said the court, it is instead expiration of the lease by its own terms. The second situation is where a lessee makes a conscious decision and takes an overt act toward giving up lease rights. This is "true abandonment"—the "intentional and voluntary relinquishment" of lease rights. 235 Kan. at 16. Breach of the implied covenant to explore and develop occurs when a lessee intends to retain a lease

but postpones production and so takes no development action on the lease. 235 Kan. at 16.

Where an implied covenant to explore and develop is involved, the *Rook* court noted:

"[A] lease may be subject to partial cancellation as to the undeveloped portion of the leasehold . . . but usually . . . the lessor [must] first make demand upon the lessee or partial assignee for further development prior to the entry of a decree terminating the undeveloped portion of the lease, or the order of the court may set a time within which further development must be commenced by the lessee before cancellation will be decreed." 235 Kan. at 17-18.

The *Greenwood* court found that forfeiture was appropriate in *Rook* because the lessee took positive steps demonstrating an intent to abandon the lease. He left his equipment on the property to rust and deteriorate, he tore down and partially removed a damaged pump house without repairing it, he removed the power sources for his equipment, and he did not return to the property for approximately 12 years. Since the lease had been abandoned, the court ruled that demand for compliance with the implied covenant to develop was not required. 235 Kan. at 19.

To summarize, the common law in Kansas regards forfeitures as an ultimate remedy, available only where damages or any equitable orders are insufficient. *Alford*, 102 Kan. at 405-07. Demand for compliance with the implied covenant is not a necessary condition for cancelling a lease when the facts justify such action, but the best practice is for a landowner to demand that a lessee comply with the covenant before suing for forfeiture. *Rook*, 235 Kan. at 17-18; *Greenwood*, 143 Kan. at 694. Courts may deny cancellation, even in the face of an admitted breach, where a lessee receives no prelawsuit demand to comply with the implied covenant. *Rook*, 235 Kan. at 17-18. The cases do not reveal precisely what kind of demand to comply is required; but in *Adolph v. Stearns*, giving prelawsuit notice of breach under the K.S.A. 55-201 form is acceptable for breach of *express* covenants. 235 Kan. 622, 630-31, 684 P.2d 372 (1984). Nothing in these cases suggests why K.S.A. 55-201 notice would not be appropriate for *implied* covenants.

Also, two apparent exceptions to the demand-for-compliance rule exist: futility and "true abandonment." As noted above, where

the facts indicate that demand for compliance would make no difference and refusing a lessor's request would leave the lessor without a remedy, a court may cancel the lease without prior demand because such demand would be futile. *Greenwood*, 143 Kan. at 691 (citing *Howerton*, 81 Kan. at 564). Alternatively, if it appears from the lessee's actions that a conscious choice was made to give up (or at least not to pursue) rights under a lease, cancellation is appropriate. *Rook*, 235 Kan. at 19. Demand is not required in such case because the lessee consciously abandoned the property interest. See 235 Kan. at 16.

KPC relies extensively on *Amoco Production Co. v. Douglas Energy Co., Inc.*, 613 F. Supp. 730 (D. Kan. 1985), for support. While federal cases do not override established Kansas law, they may be persuasive authority. See *Labra v. Mid-Plains Constr., Inc.*, 32 Kan. App. 2d 821, 825, 90 P.3d 954 (2004). So, to the extent that *Amoco* supplements Kansas' common law, it is persuasive. See 32 Kan. App. 2d at 825. If it contradicts established Kansas law, we follow the Kansas Supreme Court. See *Buchanan v. Overley*, 39 Kan. App. 2d 171, 175-76, 178 P.3d 53 (2008).

In *Amoco*, the federal court held: "Where the implied covenant [to explore and develop] theory is correctly applied, prior demand and notice to the lessee, or a showing of futility, is a prerequisite to entry of a decree of unconditional forfeiture." 613 F. Supp. at 735. The court examined most of the same cases mentioned above and concluded that except in cases of futility, "[d]emand remains a prerequisite for forfeiture as described above." 613 F. Supp. at 737. The court distinguished *Rook* as a case about "abandonment" instead of a case about breach of an implied covenant to explore and develop an oil and gas lease. 613 F. Supp. at 734-35.

Therefore, the *Amoco* court concluded that actions for breach of an implied covenant were not covered by the rule in *Rook*. 613 F. Supp. at 734-35. It appears that under Kansas common law abandonment is an *exception* to the general rule that prior demand is required for forfeiture. The *Amoco* court apparently saw abandonment as a cause of action distinct from breach of implied covenant, albeit with an identical potential remedy. See 613 F. Supp. at 734-35; compare *Rook*, 235 Kan. at 16-18.

This is a distinction without a difference for the case at hand. Essentially, if a lessee actually abandons lease rights, the lease may be cancelled. *Rook,* 235 Kan. at 16-18. Likewise, if a lessee breaches the implied covenant to explore and develop but receives no presuit demand to comply, the lease may be cancelled if the facts demonstrate a true abandonment. 235 Kan. at 16-18. Otherwise, the normal rule that a demand for compliance must precede forfeiture should apply. 235 Kan. at 16-18. Under Kansas' common law, a lessor may phrase a cause of action either way. *Amoco* adds nothing to this mix except that abandonment is a factual situation which must be analyzed differently than a "true" breach-of-implied-covenant case. 613 F. Supp. at 734-35, 737. To the extent that *Amoco* conflicts with Kansas' common law, the Kansas cases prevail. See *Buchanan,* 39 Kan. App. 2d at 175-76.

The district court characterized this lawsuit as one where "suit has been brought to terminate the lease without any demand having been made by the landowner upon the lessee that further development be made." Much turns on this fact. If KPC received no demand for compliance, the case should be remanded for entry of a conditional cancellation because KPC is entitled to a chance to cure its breach of the implied covenant. See *Rook,* See 235 Kan. at 17-18. KPC has indicated a desire to cure its breach. The court said a forfeiture was appropriate because it appeared futile to give it more time. However, KPC has shown its willingness to comply with the lease so reasonable conditions for compliance would be appropriate.

As mentioned above, the district court found that "suit has been brought to terminate the lease without any demand having been made by the landowner upon the lessee that further development be made." Factual findings are reviewed on appeal for substantial, competent supporting evidence. Substantial evidence is enough legal and relevant evidence that a reasonable person might regard as sufficient to support a conclusion. *Owen Lumber Co. v. Chartrand,* 283 Kan. 911, 915-16, 157 P.3d 1109 (2007). An appellate court does not redetermine questions of fact. *In re Estate of Hjersted,* 285 Kan. 559, 571, 175 P.3d 810 (2008). However, if the

acknowledged facts do not support the findings, review is appropriate.

The language of the letter to McCann gave KPC (or McCann) no reason to believe that the Lowes (or later, the Lewises) would accept efforts to negotiate immediate development. This is probably the reason why the trial court concluded that no demand for compliance was given in this case.

It appears that the Lewises contend that KPC should have risked money or resources protecting a piece of land where the title was under attack. In Kansas, an attack on a lessee's title cuts off the obligation to perform the lease duties. *Thurner v. Kaufman*, 237 Kan. 184, 193, 699 P.2d 435 (1985). Therefore, calling the December 2004 letter a demand for compliance unfairly faults KPC for failing to spend money developing land to which it might lose its rights to the property owner. Accordingly, the district court correctly found that this is not a case where the lessee received demand to comply with a broken covenant. The cancellation must stand, if at all, on some other ground. See *Rook*, 235 Kan. at 17-18.

We find that neither the futility nor the abandonment exceptions save the district court's order. Abandonment happens when a lessee takes positive, objective steps indicating an intent to surrender lease rights. *Rook*, 235 Kan. at 19. Here, KPC indicated not only an intent to retain its lease rights, KPC now knows that it must act immediately to preserve them.

KPC may have sat on its rights but so did the Lowes. If compliance was desired, they should have asked for it.

The futility argument cannot be reasonably raised in this case. KPC was not speculating on the lease; it only failed to get to it fast enough. So, this is not a case like *Howerton* where the lessee refused a demand for development and claimed a right to hold the property indefinitely without development. At trial, McCann indicated that he was willing to develop the lease, and he opined that he could begin exploring the lease within 6 months. Therefore, futility is not a viable alternative for upholding the cancellation.

We believe the Kansas precedent in this case requires us to find that the Lowes and Lewises did not ask for compliance for many

years and, in fact, the Lewises still have not done so. They want only a cancellation of the lease.

Since there has been no compliance request, and no evidence of abandonment or futility in requesting compliance, cancellation is not appropriate. KPC's actions have been sluggish, but before the extreme remedy of forfeiture could be imposed, under these facts, there should have been a demand for compliance. Absent such a demand, under these facts, KPC should be given a reasonable time to comply with the lease.

Reversed and remanded for proceedings consistent with this opinion.